**WASHINGTON POST COMPANY, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al.**

No. 88–5037.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 17, 1988.

Decided Dec. 16, 1988.

---

Barbara P. Percival, with whom Boisfeuillet Jones, Jr. and Denise E. Holmes, Washington, D.C., were on the brief, for appellant.

Thomas J. McIntyre, Atty., Dept. of Justice, with whom Jay B. Stephens, U.S. Atty., and John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., were on the brief, for appellee, U.S. Dept. of Justice, Washington, D.C., John Facciala, Asst. U.S. Atty., and Miriam M. Nisbet and Timothy J. Reardon III, Attys., Dept. of Justice, Washington, D.C., also entered appearances for appellee.

Charles F.C. Ruff, Richard F. Kingham and Bruce N. Kuhlik, Washington, D.C., were on the brief for appellee, Eli Lilly and Co.

Before WALD, Chief Judge, and MIKVA and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

The Washington Post Company ("Post") is pursuing access to a report, compiled by outside directors of Eli Lilly and Company ("Lilly"), from the Department of Justice ("Department") under the Freedom of Information Act ("FOIA"). The Department claims that the document is protected from disclosure under four of the Act's exemptions, 5 U.S.C. § 552(b)(3), (4), (7)(B), (7)(C) (1982 & Supp.1988). The district court granted the government summary judgment on all four grounds, and the Post appeals. We reverse the court's decision

as to the applicability of exemption (3) and (7)(C), remand the record for a determination of whether the requirements of (7)(B), as discussed below, are met in this case, and retain the case as to exemption (4). The district court concluded that the report was commercial information that fell within exemption (4) because it was confidential or, in the alternative, privileged as a "self-evaluative report." We need not address this less precedent-bound question unless exemption (7)(B) is found not to be applicable. If, however, it is determined that the report is not shielded under exemption (7)(B), we will decide the exemption (4) question at that time.

## I. BACKGROUND

In 1982, Eli Lilly introduced an arthritis drug, benoxaprofen, under the brand name Oraflex, but withdrew it a few months later, after reports of deaths and other severe adverse reactions. The company faced several product liability suits, an investigation by the Food and Drug Administration ("FDA") and a threatened shareholder derivative suit. In December 1982, Lilly's board of directors established a special committee of outside directors which, with the help of an outside law firm, began an investigation. The committee was charged with evaluating the company's development and marketing of the drug and determining whether the company had any claims against employees or others and, if it did, whether it would be in its best interests to pursue them.

Soon after, the Department, at the request of the FDA, began its own investigation. There apparently had been numerous deaths and other severe reactions in other countries attributed to Oraflex. Lilly did not report these reactions to the FDA, either in its application for permission to distribute Oraflex in this country or afterward. Nor did Lilly include liver failure, kidney failure or jaundice—the reactions that had occurred overseas—in its Oraflex labels as possible adverse reactions. If Lilly knew of these deaths and other severe reactions, through reports from its foreign subsidiaries or otherwise, it was subject to federal prosecution for not reporting this information to the FDA and for not including it on labels of Oraflex distributed in the United States.

On July 8, 1983, the Department made a written request to Lilly for certain documents, including any investigations conducted by Lilly that concerned reports of adverse reactions made by Lilly's foreign subsidiaries to its U.S. headquarters or that concerned Lilly's reporting of these adverse reactions to the FDA. Lilly decided to cooperate with the Department, after the Department assured it in writing that material made available would remain confidential and any third-party requests, including FOIA ones, would be resisted. When the special committee's report, entitled "Report and Recommendations of the Special Committee of the Board of Directors of Eli Lilly and Company Concerning the Development and Marketing of Oraflex," was completed in October 1983, Lilly submitted it to the Department. The Department's investigation proceeded apace, and in March 1984, the Department impanelled a grand jury to consider indictments of the company and possibly individuals.

Lilly's open letters and reports to shareholders announced the special committee's report and the Department and grand jury investigations. A Post reporter, covering the Oraflex story, first requested a copy of the report under FOIA in April 1984. The Department denied the request on exemption (3), (7)(A) and 7(C) grounds, but on administrative appeal, the department refused to disclose the report on exemption (4) and 7(B) grounds. The Post filed this suit to compel production, but the district court below granted summary judgment for the Department on all four grounds asserted in its motion: exemptions (3), (4), (7)(B) and (7)(C).

## II. DISCUSSION

### A. *Exemption (3)*

■ Exemption (3) shields material that is "specifically exempted from disclosure by [another] statute." 5 U.S.C. § 552(b)(3). The court below found that Federal Rule of

Criminal Procedure 6(e) protects Lilly's report because it prohibits an attorney for the government from disclosing "matters occurring before the grand jury." Fed.R. Crim.P. 6(e). The court found that the report was a matter occurring before the grand jury because the report was subpoenaed by the grand jury in September 1984, was used by government lawyers to question witnesses before the jury, and was available to the jurors. Our review compels the conclusion that exemption (3) has no bearing on this case.

This court has consistently held that Rule 6(e) does not draw a "veil of secrecy" over all documents about activity investigated by the grand jury or even all documents revealed to the grand jury. *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1382 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). The relevant inquiry is whether the document would reveal the inner workings of the grand jury, such as witness names, or the substance of testimony or the direction and strategy of the investigation. *See Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 869–70 (D.C. Cir.1981). Moreover, the document itself must reveal the inner workings; the government cannot immunize a document by publicizing the link. *See Senate of Puerto Rico v. Department of Justice,* 823 F.2d 574, 583 (D.C.Cir.1987).

The report at issue here was in existence almost five months before the grand jury was impanelled. It had a purpose wholly separate from grand jury deliberations, as it was commissioned by a private corporation to evaluate that corporation's past conduct, defenses, liabilities and potential civil claims against others. Nor would the report have revealed anything whatsoever about the grand jury's deliberations had the government not disclosed the report's role in those deliberations. When the Post first requested disclosure of the report, it was not yet before the grand jury. That the grand jury subpoenaed it five months later and that it used the report to question witnesses would not be known by the Post today had the Department not recounted the report's grand jury role in this litigation.

Therefore, we hold that exemption (3) does not constitute a ground for denying the Post's FOIA request. We find not only that the Department has failed to show that disclosure would reveal the grand jury's inner workings; we find that such a showing could not be made on these facts. The government's decision to persist in arguing this basis for denial, on appeal, despite this court's 1987 decision in *Senate of Puerto Rico v. Department of Justice,* was questionable at best.

### B. *Exemption (7)(C)*

■ Exemption (7)(C) exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). We need not dwell on whether the special committee's report is information compiled for law enforcement purposes. The Post concedes that it is. But we find that none of the privacy interests encompassed by (7)(C) would be implicated by disclosure of the special committee's report.

■ The disclosures with which the statute is concerned are those of "an intimate personal nature" such as marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, and reputation. *Sims v. CIA,* 642 F.2d 562, 574 (D.C.Cir.1980). Information relating to business judgments and relationships does not qualify for exemption. *See id.* at 575. This is so even if disclosure might tarnish someone's professional reputation. *See Cohen v. EPA,* 575 F.Supp. 425, 429 (D.D.C.1983). The report that the Post seeks here would not reveal anything of a private nature about any employees mentioned, as it is an investigation and assessment of the business decisions of Lilly employees during the development and marketing of a commercial product. It may be that such a report, if it accused

individual employees of having committed a crime, would implicate the privacy interest of personal honor. But there is no reason to assume that this report accuses anyone of breaking the law and the government does not so allege.

 Nonetheless, it is true that the protection accorded reputation would generally shield material when disclosure would show that an individual was the target of a law enforcement investigation. *See Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 866 (D.C.Cir. 1981). The report in question does not, however, in itself identify any particular employees as targets of the Department's investigation. Since the report was prepared by Lilly for its own business purposes, the inclusion of a name in the special committee's report does not divulge whether the individual was a target of any law enforcement investigation or even whether the individual was considered, by law enforcement personnel, to have any relevance to their inquiry.

## C. *Exception (7)(B)*

Exemption (7)(B) exempts "records or information compiled for law enforcement purposes" to the extent that production "would deprive a person of a right to a fair trial or an impartial adjudication." 5 U.S. C. § 552(b)(7)(B). It is settled that the report satisfies the first part of this definition. The legitimacy of the Department's invoking (7)(B) turns on the meaning and applicability of the second portion of the exemption.

What is required to establish that production of a document being sought under FOIA would deprive a person of a right to a fair trial is a question of first impression for this court. In framing a test, we write on a virtually clean slate. Few courts have decided (7)(B) questions and the legislative history on this provision is scant. The wording of the statute is all Congress has given us to work with. *See* United States Department of Justice, Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act 8 (1975) [hereinafter "A.G. Mem."], *reprinted in*

House Comm. on Gov. Operations and Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 Source Book, at 518 (1975) [hereinafter "Sourcebook"]. The exemption was enacted as part of the FOIA amendments of 1974. Congress replaced the old section (7), which protected any investigatory record not otherwise available, with the six tightly drawn categories of protection listed in § 552(b)(7). The wording of the second of those categories, now (7)(B), survived intact and without debate from the floor amendment by Senator Philip Hart.

We begin this analysis, as we must, within the framework that precedent does provide. FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly. *See Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). The burden of proof rests on the party who seeks to prevent disclosure. *See EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). That burden cannot be met by mere conclusory statements; the agency must show how release of the particular material would have the adverse consequence that the Act seeks to guard against. *See Campbell v. HHS,* 682 F.2d 256, 259 (D.C. Cir.1982).

The Attorney General's Memorandum on the 1974 Amendments, of interest whether or not due deference, interpreted the exemption as protecting the rights of private persons, including corporations, and applying to both civil and criminal proceedings as well as agency adjudications. The exemption, according to the Attorney General, was meant to prevent disclosures from conferring an unfair advantage upon one party to an adversary proceeding or leading to prejudicial publicity in pending cases that might inflame jurors or distort administrative judgment. *See* A.G. Mem. at 9, Sourcebook at 519.

The few cases that have addressed (7)(B) as a ground for withholding documents have rejected it as inapplicable because one or another threshold element was not es-

tablished. In *Playboy Enterprises, Inc. v. Department of Justice*, 516 F.Supp. 233, 246 (D.D.C.1981), *aff'd in pertinent part*, 677 F.2d 931 (D.C.Cir.1982), the district court rejected the ground because no proceedings were pending. Two district courts have found (7)(B) grounds inapplicable because the government failed to show that publicity would be so prejudicial as to deprive someone of a fair trial or impartial adjudication. *See Associated General Contractors of America v. Small Business Administration*, 1 Gov't Disclosure Cas. (P–H) ¶ 79,119, at 79,158 (D.D.C. Oct. 1, 1979) (finding proffer inadequate to show extent of publicity and prejudice that would result); *Education/Instruccion, Inc. v. Department of Housing and Urban Development*, 471 F.Supp. 1074, 1078 (D.Mass.1979) (holding that administrative adjudicator's seeing investigative report could not vitiate impartiality as law permits investigator to sit as adjudicator on same matter).

Perhaps the major value of the Attorney General's Memorandum, in conjunction with this sparse case law, is to emphasize the wide variety of persons and proceedings but narrow range of situations to which (7)(B) applies. As with all FOIA exemptions, (7)(B) is limited to protecting material only where release would bring about the adverse consequence that Congress sought to prevent.

■■■ Today, we hold that to withstand a challenge to the applicability of (7)(B) the government bears the burden of showing: (1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings. Where the government is denying access to material generated by someone else, as here, the government must be able to confirm, to its own satisfaction, whether by affidavit or otherwise, that (1) and (2) above are satisfied.

■■■ Whether the first and second prong of this test are satisfied is, in the first instance, for the district court to ascertain. The record before us in this case does not contain the factual findings necessary to resolve the question, and we therefore remand the record for a determination of this point. The court below did find that there were no longer any criminal proceedings pending or imminent, as the Department of Justice had accepted a guilty plea from Lilly and a nolo contendere plea from the Chief Medical Officer of Lilly Research Laboratories and planned no further indictments. The court also found that the parties asserted that four civil product liability cases were pending. But the status of those or other civil cases at this point is not clear. The Department's brief deferred entirely to Lilly on this question. Lilly merely asserted, in a footnote, that there was litigation pending, without specification. Such an unsupported assertion, from a non-government party, does not rise to the level of proof necessary to satisfy the first prong of a (7)(B) exemption.

■■■ Even if Lilly were faced with current litigation arising from its marketing of Oraflex, it would not automatically follow that disclosure of the report would deprive Lilly of a fair trial. The second prong is not a redundancy but requires separate findings. Congress made the threshold of (7)(B) higher than for most of the other exemptions for law enforcement material. Whereas (7)(A), (C), (D) and (F) permit records to be withheld if release "could reasonably be expected to" cause a particular evil, (7)(B) requires that release "would" deprive a person of fair adjudication. § 552(b)(7)(A)–(F). It may be that release of the document to the Post could be expected to lead to publicity which was not just disadvantageous to Lilly but of a nature and degree that judicial fairness would be compromised. It may be that disclosure through FOIA would furnish access to a document not available under the discovery rules and thus would confer an unfair advantage on one of the parties. The trial court, on remand, is best situated to consider whether the facts here are sufficient to meet (7)(B)'s second prong.

### III. CONCLUSION

Accordingly, we remand the record to the district court for a determination of whether the Department of Justice is entitled, under 5 U.S.C. § 552(b)(7)(B), to withhold the "Report and Recommendations of the Special Committee of the Board of Directors of Eli Lilly and Company Concerning The Development and Marketing of Oraflex" which was requested by The Washington Post. In addition, we reverse the district court's findings that exemptions (3) and (7)(C) permit the Department of Justice to resist The Washington Post's FOIA request.

The record is forthwith remanded to the district court for further proceedings, consistent with this opinion.

It is so ordered.