## AT & T Inc., Petitioner

### v.

## FEDERAL COMMUNICATIONS COMMISSION; United States of America, Respondent

CompTel, Intervenor per Clerk Order of 10/10/08.

No. 08–4024.

United States Court of Appeals, Third Circuit.

Argued March 13, 2009.

Filed: Sept. 22, 2009.

Colin S. Stretch (argued), Kelly P. Dunbar, Kellogg, Huber, Hansen, Todd, Evans & Figel, Washington, DC, for Petitioner.

Michael A. Krasnow (argued), Federal Communications Commission, Washington, DC, Catherine G. O'Sullivan, Robert J. Wiggers, United States Department of Justice, Antitrust Division, Appellate Section, Washington, DC, for Respondent.

Mary C. Albert, CompTel, Washington, DC, for Intervenor.

Before FUENTES, CHAGARES, and TASHIMA *, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

The Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 551–59, requires a federal agency to disclose certain documents within its possession. But FOIA exempts from mandatory disclosure "records or information compiled for law enforcement purposes ... to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy," § 552(b)(7)(C) ("Exemption 7(C)"), and defines "person" to "include an individual, partnership, corporation, association, or public or private organization other than an agency," § 551(2). Human beings have such "personal privacy." This case requires us to determine whether corporations do, as well.

AT & T, Inc. ("AT & T") argued that the Federal Communications Commission ("FCC") could not lawfully release documents obtained during the course of an investigation into an alleged overcharging on the ground that disclosure would likely invade the company's "personal privacy." The FCC rejected AT & T's argument and held that a corporation, as a matter of law, has no "personal privacy" in the first place. AT & T filed a petition for review. We will grant the petition and remand to the FCC for further proceedings.

## I.

AT & T participated in a federal program administered by the FCC, called "E-Rate," that was designed to increase schools' access to advanced telecommunications technology. As part of the program, AT & T provided equipment and services to elementary and secondary schools, and then billed the Government for the cost of the equipment and services. In August 2004, AT & T discovered that it might have overcharged the Government for certain work done for the New London, Connecticut school district. AT & T voluntarily reported the matter to the FCC, and the FCC's Enforcement Bureau ("Bureau") conducted an investigation. The two sides ultimately resolved the matter via a consent decree.

During the course of the investigation, the Bureau ordered AT & T to produce, and the company did indeed produce, a range of documents related to its work with the New London schools. Those documents included invoices, internal e-mails providing pricing and billing information for the work done in New London, responses to Bureau interrogatories, names of employees involved in the allegedly im-

* Honorable A. Wallace Tashima, Senior Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

proper billing, and AT & T's own assessment of whether and to what extent the employees involved in the overcharging violated its internal code of conduct.

On April 4, 2005, CompTel, a trade association representing some of AT & T's competitors, submitted a FOIA request for "[a]ll pleadings and correspondence contained in" the Bureau's AT & T E–Rate investigation file. Appendix ("App.") 27. AT & T submitted a letter to the Bureau opposing CompTel's request, arguing that the FCC collected the documents that AT & T produced for law enforcement purposes and therefore that the FCC regulations implementing FOIA's exemptions prohibited disclosure. CompTel submitted a reply letter.

On August 5, 2005, the Bureau issued a letter-ruling rejecting AT & T's argument that Exemption 7(C) and the FCC's regulations implementing that exemption prohibit disclosure. That exemption, the Bureau held, does not apply to corporations because corporations lack "personal privacy." AT & T filed an application requesting the FCC to review the Bureau's ruling. On September 12, 2008, the FCC issued an order denying the application and compelling disclosure, again on the ground that Exemption 7(C) does not apply to corporations.

Before addressing the merits, the FCC held that AT & T failed to comply with the FCC's regulations in filing its application for review of the Bureau's order. Generally, only a FOIA requester may file an application for the FCC to review the Bureau's resolution of that request. But, there is an exception. According to 47 C.F.R. § 0.461(i)(1), when a FOIA request for inspection of records submitted in confidence pursuant to §§ 0.457(d) or 0.459 is granted (even if only in part), the submitter of the information—in addition to the requester—may file an application for review. The FCC determined, however, that

AT & T did not submit the material it provided to the FCC in confidence pursuant to either of those regulations, because AT & T failed to include with that material a request that the FCC treat that material as confidential. Nevertheless, the FCC stated that it would, "on [its] own motion," consider the merits of AT & T's application for review. App. 10.

The FCC then held that a corporation lacks "personal privacy" within the meaning of Exemption 7(C). It determined that FCC precedent supports this view, App. 10 (citing *Chadmoore Commc'n, Inc.*, 13 FCC Rcd. 23943, 23946–47 ¶ 7 (1998)), as does judicial precedent, App. 11–12 (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Wash. Post Co. v. U.S. Dep't of Justice*, 863 F.2d 96, 100–01 (D.C.Cir.1988); *Cohen v. EPA*, 575 F.Supp. 425, 429–30 (D.D.C. 1983)). The FCC also concluded that this interpretation accords with the Exemption's purpose to protect key players in an investigation—targets, witnesses, and law enforcement officers—from the "literal embarrassment and danger" that an individual might suffer, rather than from the "more abstract impact" that a corporation might suffer. App. 12. The FCC stated that a corporation's privacy interests in other contexts—such as Fourth Amendment search-and-seizure law and the discovery regime created by the Federal Rules of Civil Procedure—have no bearing on whether a corporation has a privacy interest in the context of Exemption 7(C). App. 13.

AT & T filed a petition for review of the FCC's order, arguing that the FCC incorrectly interpreted Exemption 7(C) to prevent a corporation from claiming a "personal privacy" interest. AT & T further argues that, should we interpret the statute to allow a corporation to claim a "per-

sonal privacy" interest, disclosure of AT & T's documents is, as a matter of law, reasonably likely to constitute an "unwarranted invasion" of that interest. The FCC and CompTel (who entered this case as an intervenor) oppose on the merits and also raise certain threshold issues. CompTel argues that this Court lacks subject matter jurisdiction over AT & T's petition for review and therefore must dismiss. The FCC argues that we should deny the petition for review because AT & T failed to challenge the FCC's determination that AT & T did not comply with certain procedural requirements during the administrative proceedings.[1]

## II.

■ The FCC had jurisdiction to issue its order denying AT & T's application for review. *See* 47 U.S.C. §§ 154(i) (providing that the FCC "may perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with [the Communications Act of 1934 ('Communications Act'), 47 U.S.C. §§ 151–615b], as may be necessary in the execution of its functions"), 155(c)(5) (authorizing the FCC to adjudicate applications for review of order issued by delegated panel). CompTel argues that we lack appellate jurisdiction. We disagree.

CompTel asserts that because the Administrative Procedure Act ("APA") confers AT & T's cause of action, and because 28 U.S.C. § 1331 provides jurisdiction to review an APA claim, the district courts have jurisdiction to hear AT & T's petition for review. CompTel acknowledges that 28 U.S.C. § 2342(1) gives the courts of appeals exclusive jurisdiction over orders "under" the Communications Act within the meaning of 47 U.S.C. § 402(a), but argues that the FCC's order in this matter is not such an order.

CompTel made this argument for the first time to this Court in opposing AT & T's petition for review (which is the first time it could have made this argument). Therefore, there is no decision on this issue to review, and we will address the issue in the first instance.

Section 2342 provides that "[t]he court[s] of appeals ... ha[ve] exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—(1) all final orders of the [FCC] made reviewable by section 402(a) of title 47." 28 U.S.C. § 2342(1). A "final order[ ] of the [FCC] made reviewable by section 402(a) of title 47," § 2342(1), is, with certain exceptions not relevant here, "an[ ] order of the [FCC] under th[e Communications] Act...." 47 U.S.C. § 402(a). Thus, we have jurisdiction to review the FCC's order adjudicating AT & T's application for review if that order is an order "under" the Communications Act.

Courts have consistently held that an order adjudicating an alleged violation of FCC regulations is an order "under" the Communications Act within the meaning of § 402(a). *See, e.g., Rocky Mountain Radar, Inc. v. FCC,* 158 F.3d 1118, 1119, 1121–23 (10th Cir.1998) (holding that an order determining that a business violated FCC regulations governing the marketing of radar-jamming devices is an order "under" the Communications Act within the meaning of § 402(a)); *Maier v. FCC,* 735 F.2d 220, 224 (7th Cir.1984) (holding that order determining that a broadcasting company did not violate FCC regulations governing personal attacks on news subjects is an order "under" the Communications Act within the meaning of § 402(a)).

The FCC's order that is the subject of AT & T's petition for review adjudicated AT & T's claim that disclosure of the information collected by the FCC concern-

---

1. Disclosure is currently stayed pending the outcome of this appeal.

ing the E–Rate program in New London would violate FCC regulations implementing Exemption 7(C).[2] Therefore, the order constituted an order "under" the Communications Act within the meaning of § 402(a). As a result, § 2342(1) provides that the courts of appeals have exclusive jurisdiction to review that order.[3]

### III.

Next, the FCC argues that we must affirm the order because AT & T has failed to challenge the FCC's determination that AT & T failed to comply with relevant procedural requirements in filing its application for review of the Bureau's order. We disagree.

▆▆▆▆ The FCC made this argument for the first time in opposing AT & T's petition for review (which is the first time it could have made this argument). Therefore, there is no decision on this issue to review, and we will address the issue in the first instance. When a decision rests on multiple, independent grounds, a reviewing court should affirm it if one of those grounds is correct. *See*

*Levy v. Sterling Holding Co.*, 544 F.3d 493, 508–09 (3d Cir.2008). An appellant waives an argument in support of reversal if he does not raise that argument in his opening brief. *FDIC v. Deglau*, 207 F.3d 153, 169 (3d Cir.2000).

AT & T's procedural default was not an independent ground supporting the FCC's decision. The FCC, in its order, specifically stated that although it recognized AT & T's default, it would consider AT & T's claims on the merits "on [its] own motion." App. 10. This belies the FCC's claim that procedural default was an alternative holding. If it truly was an alternative holding, the FCC would not have needed to make its "own motion" to excuse the default in order to reach the merits. It could have discussed procedural default and then, separately and without any justifying segue, discussed the merits. Had the FCC done this, the procedural default holding would stand as an independent, sufficient ground for denial. That the FCC did not do this tells us that it did not (even in the alternative) base its decision on procedural default.[4]

---

**2.** FOIA itself does not prohibit disclosure of information falling within its exemptions. When information falls within an exemption, no party can compel disclosure, but the FCC can still make a disclosure on its own accord unless some independent source of law prohibits the agency from doing so. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 293, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (explaining that, standing alone, FOIA's exemptions "do[ ] not give [courts] the authority to bar disclosure"). Thus, the disclosure of information falling within an exemption does not violate FOIA itself, but rather an independent source of law. Here, FCC regulations provide this independent source. *See* 47 C.F.R. § 0.457(g)(3) (prohibiting disclosure of information covered by Exemption 7(C)).

**3.** CompTel cites two cases, *Chrysler*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208, and *GTE Sylvania, Inc. v. Consumer Product Safety Comm'n*, 598 F.2d 790 (3d Cir.1979), which it claims stand for the proposition that the dis-

trict courts, not the courts of appeals, have jurisdiction to review reverse-FOIA claims. CompTel is mistaken. True, in each of those cases, the district courts, rather than the courts of appeals, had jurisdiction to hear a reverse-FOIA claim. But neither of those opinions indicate that the laws allegedly barring disclosure in those cases contain any provision triggering the operation of a statute that would have vested jurisdiction exclusively in another court.

**4.** If the FCC lacked the authority to consider the merits on its own motion, then perhaps its order actually did consist of two alternative holdings. If the FCC lacked such authority, then its justification for issuing a merits holding—its "own motion" to excuse procedural default—would have been erroneous, and all that would have remained would be one procedural default holding and one merits holding, with nothing connecting the two. But CompTel does not appear to argue that the FCC lacked such authority, and for good rea-

**496**

### IV.

AT & T argues that the FCC incorrectly interpreted Exemption 7(C) when it held that a corporation lacks the "personal privacy" protected by that exemption. We agree with AT & T.

▆ The FCC's interpretation of Exemption 7(C) is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), because FOIA applies government-wide, and no one agency is charged with enforcing it. *ACLU v. Dep't of Def.,* 543 F.3d 59, 66 (2d Cir.2008) (declining to accord deference to Department of Defense interpretation of FOIA). Thus, we exercise plenary review of the FCC's interpretation of FOIA, and will set aside the FCC's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

### A.

▆ In 1966, dissatisfied with then-existing statutory mechanisms compelling disclosure of Government records, Congress enacted FOIA to improve public access to information controlled by federal agencies. *See OSHA Data/CIH, Inc. v. U.S. Dep't of Labor,* 220 F.3d 153, 160 (3d Cir.2000) (describing Congress's intent). FOIA embodies a philosophy of full disclosure: an agency may deny a reasonable request for information only if the information falls into a statutorily delineated exemption. *Id.*

This case concerns the so-called law enforcement exemption, Exemption 7(C), which shields from mandatory disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law en-

forcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). FOIA's Exemption 6 also uses the phrase "personal privacy," shielding from compulsory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6). FOIA does not define "personal," but it does define "person" to "include[ ] an individual, partnership, corporation, association, or public or private organization other than an agency." § 551(2).

Neither the Supreme Court nor this Court has ever squarely rejected a proffered personal privacy interest of a corporation. The most that can be said of the Supreme Court's cases and of our cases is that they suggest that Exemptions 7(C) and 6 frequently and primarily protect—and that Congress may have intended them to protect—the privacy of individuals. *See, e.g., Reporters Comm.,* 489 U.S. at 764 n. 16, 109 S.Ct. 1468; *U.S. Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 599, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982); *Davin v. U.S. Dep't of Justice,* 60 F.3d 1043, 1058 (3d Cir.1995) (citing *Landano v. U.S. Dep't of Justice,* 956 F.2d 422, 426 (3d Cir.1992)); *Manna v. U.S. Dep't of Justice,* 51 F.3d 1158, 1166 (3d Cir.1995); *Cuccaro v. Sec'y of Labor,* 770 F.2d 355, 359 (3d Cir.1985) (citing *Lame v. U.S. Dep't of Justice,* 654 F.2d 917, 923 (3d Cir.1981)).

### B.

▆ As the Supreme Court has held, a court must "begin by looking at the language of the [statute].... When [the court] find[s] the terms of a statute unambiguous, judicial inquiry is complete, ex-

son: the FCC had it. *See* 47 C.F.R. § 1.3 (allowing the FCC to waive any regulation

"for good cause shown").

cept 'in rare and exceptional circumstances.'" *Rubin v. United States,* 449 U.S. 424, 429–30, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (quoting *TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (quotation marks and citation omitted)).

■ AT & T argues that the plain text of Exemption 7(C) indicates that it applies to corporations. After all, "personal" is the adjectival form of "person," and FOIA defines "person" to include a corporation. We agree. It would be very odd indeed for an adjectival form of a defined term not to refer back to that defined term. See *Del. River Stevedores v. DiFidelto,* 440 F.3d 615, 623 (3d Cir.2006) (Fisher, J., concurring) (stating that it is a "grammatical imperative[]" that "a statute which defines a noun has thereby defined the adjectival form of that noun"). Further, FOIA's exemptions indicate that Congress knew how to refer solely to human beings (to the exclusion of corporations and other legal entities) when it wanted to. Exemption 7(F), for example, protects information gathered pursuant to a law enforcement investigation that, if released, "could reasonably be expected to endanger the life or physical safety of any *individual.*" 5 U.S.C. § 552(b)(7)(F) (emphasis added). Yet, Congress, in Exemption 7(C), did not refer to "the privacy of any individual" or some variant thereof; it used the phrase "personal privacy."

The FCC and CompTel's text-based arguments to the contrary are unconvincing. They cite Supreme Court case law for the proposition that, whenever possible, statutory words should be interpreted "in their ordinary, everyday senses." *Malat v. Riddell,* 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966). The ordinary meaning of "person" is human being, so, the argument concludes, "personal" must incorporate this ordinary meaning. This argument is unpersuasive. It fails to take into account that "person"—the root from which the statutory word at issue is derived—is a defined term. *See Biskupski v. Att'y Gen.,* 503 F.3d 274, 280 (3d Cir.2007) ("If, as here, 'a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.'" (quoting *Stenberg v. Carhart,* 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000))).

The FCC and CompTel next argue that FOIA's other uses of the phrase "personal privacy" indicate that the phrase does not encompass corporations. They point to Exemption 6, which shields from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), and observe that courts have held that this exemption applies only to individuals and not to corporations. Thus, the FCC and CompTel argue, the phrase "personal privacy" in Exemption 6 applies only to individuals, and therefore "personal privacy" in Exemption 7(C) applies only to individuals, as well. This argument is flawed. Suppose (though we express no opinion on the issue) that Exemption 6 applies only to individuals (and not to corporations). This does not mean that *each and every component phrase* in that exemption, taken on its own, limits Exemption 6 to individuals. It means only that *some* language in that exemption does so. The phrase "personnel and medical files" serves this function. It limits Exemption 6 to individuals because only individuals (and not corporations) may be the subjects of such files. Therefore, nothing necessarily can be gleaned about the scope of "personal privacy," because Exemption 6 would apply only to individuals even if "personal privacy," taken on its own, encompasses corporations.

Thus, we hold that FOIA's text unambiguously indicates that a corporation may have a "personal privacy" interest within the meaning of Exemption 7(C). This, for us, ends the matter. *Rubin,* 449 U.S. at 429–30, 101 S.Ct. 698. We need not consider the parties' arguments concerning statutory purpose,[5] relevant (but non-binding) case law,[6] and legislative history.[7]

## V.

AT & T next argues that, as a matter of law, the invasion of personal privacy

---

**5.** Nevertheless, we note that interpreting "personal privacy" according to its plain textual meaning serves Exemption 7(C)'s purpose of providing broad protection to entities involved in law enforcement investigations in order to encourage cooperation with federal regulators. Corporations, like human beings, are routinely involved in law enforcement investigations. Corporations, like human beings, face public embarrassment, harassment, and stigma because of that involvement. Reading "personal privacy" to exclude corporations would disserve Exemption 7(C)'s purpose of encouraging corporations—like human beings—to cooperate and be forthcoming in such investigations. Finally on this topic, "[t]he best evidence of th[e] purpose [of a statutory text] is the statutory text adopted by both Houses of Congress and submitted to the President." *W. Va. Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 98, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991), *superseded by statute on other grounds,* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071 (1991). That text, we have explained, demonstrates that a corporation may have "personal privacy" within the meaning of Exemption 7(C).

**6.** The Court of Appeals for the District of Columbia Circuit cases discussed by the parties—*Multi Ag Media LLC v. Department of Agriculture,* 515 F.3d 1224 (D.C.Cir.2008), *Judicial Watch, Inc. v. FDA,* 449 F.3d 141 (D.C.Cir.2006), and *Washington Post,* 863 F.2d 96—do not impugn our textual analysis. The court in *Multi Ag Media* suggested that "personal privacy" within the meaning of Exemption 6 extends to individuals only. But it appears to have inferred this conclusion from its observation that Congress's main purpose in enacting Exemption 6 was to protect individuals (and not necessarily corporations). See 515 F.3d at 1228. We do not believe that inferring the statute's meaning merely from evidence of the enacting Congress's chief purpose is analytically appropriate: " 'the fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.' " *PGA Tour, Inc. v. Martin,* 532 U.S. 661, 689, 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting *Pa. Dep't of Corr. v. Yeskey,* 524 U.S. 206, 212, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998) (quotation marks omitted)). The *Judicial Watch* court, in applying Exemption 6, considered only individuals' privacy interests in balancing "personal privacy" against the need for public disclosure. Yet the court's description of the parties' arguments indicates that the FDA (the federal agency holding the documents in that case), in its attempt to resist disclosure, only cited individual privacy interests in the first place. See 449 F.3d at 152–53. Thus, the court never had the occasion to pass on whether "personal privacy" encompasses corporate privacy. Finally, the court in *Washington Post* noted that Exemption 7(C) concerns only "intimate" details, including "marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, and reputation." 863 F.2d at 100. But a corporation, too, has a strong interest in protecting *its* reputation.

In any event, to the extent that these cases can be read to conflict with our textual analysis, we decline to follow them.

**7.** We decline the FCC and CompTel's invitation to examine the legislative history of Exemption 7(C) because we find the text of FOIA to be unambiguous. *See In re Mehta,* 310 F.3d 308, 311 (3d Cir.2002) ("We look to the text of a statute to determine congressional intent, and look to legislative history only if the text is ambiguous."); *see generally Bruesewitz v. Wyeth, Inc.,* 561 F.3d 233, 244 (3d Cir.2009) ("We have recognized that legislative history is not without its shortcomings as a tool of interpretation. 'As a point of fact, there can be multiple legislative intents because hundreds of men and women must vote in favor of a bill in order for it to become a law.' ") (quoting *Morgan v. Gay,* 466 F.3d 276, 278 (3d Cir.2006)).

caused by the release of the documents the company submitted to the FCC could reasonably be expected to be "unwarranted" within the meaning of Exemption 7(C). We disagree.

AT & T made this argument to the FCC during the administrative proceedings, but because the FCC held that "personal privacy" does not apply to corporations, the FCC did not have occasion to discuss whether a potential invasion of AT & T's "personal privacy" would be "unwarranted." Therefore, there is no decision on this issue to review.

■ "[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 20 (D.C.Cir.2008) (quoting *PPG Indus. v. United States*, 52 F.3d 363, 365 (D.C.Cir.1995)). AT & T attempts to avoid this bedrock principle by noting that "when [a FOIA] request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing," granting that request would, as a matter of law, constitute a "clearly unwarranted" invasion of personal privacy within the meaning of Exemption 7(C), *Reporters Comm.*, 489 U.S. at 780, 109 S.Ct. 1468, so remand would be unnecessary. AT & T argues that none of the AT & T records that CompTel wants disclosed contains "official information" about the FCC or otherwise pertain to the FCC's conduct. Rather, AT & T contends

that the request is aimed at gathering information about AT & T, contained in AT & T documents, that "the Government happens to be storing," *id.*, by virtue of the Bureau's investigation. We cannot agree. CompTel's FOIA request does not fit into that narrow category.

CompTel has indeed alleged that it seeks "'official information' about a Government agency." *Id.* For example, in its opposition to AT & T's letter-request to block disclosure, CompTel explains that it seeks information about "the receipt of universal service support [the E–Rate program] for the New London Connecticut Public Schools." App. 37. CompTel notes that the FCC "terminated the investigation upon issuing an Order adopting a Consent Decree." App. 37. E–Rate has (at least) two participants: AT & T, which provides services to the local school districts (and bills the Government), and the FCC, which actually administers the entire operation. It stands to reason, then, that documents in the FCC's investigative file may shed light on the FCC's administration of E–Rate. This is especially true given that CompTel made (as it was entitled to make) a very broad request for "all" the documents in the investigative file, not merely for those limited to, say, employee home addresses, which would be less likely to provide any insight into the functioning of a federal agency.[8]

■ We therefore abide by long-established principles of administrative law and will remand the matter to the FCC with instructions to determine, in accordance with our construction of Exemption 7(C),

8. Further, determining that each document AT & T submitted to the FCC contains *some* protected content would be difficult enough, but FOIA requires more. We would have to be convinced that every "reasonably segregable *portion*" of each document contains protected information. 5 U.S.C. § 552(b) (flush language) (emphasis added). Holding, on the

very limited record before us, that Exemption 7(C) protects every reasonably segregable jot and tittle of each document that AT & T submitted would be truly extraordinary, and, in our view, not an appropriate course of action for a reviewing court to undertake in the first instance.

whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," § 552(b)(7)(c).

## VI.

For the above reasons, we will grant AT & T's petition for review and remand the matter to the FCC for further proceedings consistent with this opinion.