Filed 05/09/25



VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-02289

---

Vermont Journalism Trust v. Vermont Department of Public Safety

---

<u>Opinion and Order on Cross-Motions for Summary Judgment</u>

Plaintiff Vermont Journalism Trust (VTDigger), which operates the VTDigger news website, submitted a public records request to Defendant Department of Public Service (DPS) seeking all audio and video footage of police interactions with Addison County State's Attorney Eva Vekos, on January 25, 2024, when she is alleged to have arrived at a crime scene inebriated and police arrested her for driving under the influence (DUI). *See* 1 V.S.A. §§ 315–320 (Public Records Act or PRA). Ms. Vekos subsequently was charged with DUI, and her criminal trial is currently scheduled for this coming June. DPS denied access to all such records initially and on administrative appeal. VTDigger then filed this suit seeking to enforce the PRA. After the Court denied DPS's motion to dismiss, the parties filed the pending cross-motions for summary judgment. In short, DPS argues that the withheld records are entirely exempt from production under the PRA as records the release of which: (a) could be expected to interfere with enforcement proceedings; and (b) would deprive a person of a fair or impartial trial.[1] 1 V.S.A. § 317(c)(5)(A)(i) (interference with enforcement), (c)(5)(A)(ii)

---

[1] In the dismissal decision, the Court rejected DPS's argument that the exemption for "[r]ecords that, if made public pursuant to this subchapter, would cause the custodian to violate duly adopted standards of ethics or conduct for any profession regulated by the State" applies in this case. 1 V.S.A. § 317(c)(3). Although Exemption 3 is cited in DPS's

(fair trial). VTDigger argues that the records should be produced in their entirety and, even if there were a basis for withholding any of them, those that depict Ms. Vekos's arrest must be produced.

I.     Legal Standards

Summary judgment procedure is "an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c), shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 210 Vt. 375, 380. Where, as here, there are cross-motions for summary judgment, the parties

---

subsequently filed *Vaughn* index, it is not asserted as a basis for nondisclosure in its summary judgment motion. Accordingly, the Court sees no need to reconsider its dismissal ruling on this point.

opposing summary judgment "are entitled to the benefit of all reasonable doubts and inferences." *Montgomery v. Devoid*, 2006 VT 127, ¶ 9, 181 Vt. 154, 156.

The Court has explained the basic standards that apply under the PRA as follows:

> In adopting the PRA, the Legislature reaffirmed the fundamental principle of open government that public officials "are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." The PRA thus expresses a strong legislative policy "favoring access to public documents and records," and its provisions are to be "construed liberally" in favor of disclosure. Conversely, we construe the statutory exceptions to the general policy of disclosure "strictly against the custodians of the records and any doubts should be resolved in favor of disclosure." "The burden of showing that a record falls within an exception is on the agency seeking to avoid disclosure."

*Price v. Town of Fairlee*, 2011 VT 48, ¶ 13, 190 Vt. 66, 72–73 (citations omitted).

## II. Factual Background

The dispute in this case is limited to the legal question of whether, or to what extent, the PRA requires DPS to produce the requested records. There is no material dispute of fact.

The alleged events of January 25, 2024, have been widely reported on the VTDigger news website and in the media generally. They are detailed with specificity in the affidavits of police officers and related materials that are both in the record of this case and already available to the public. In short, Ms. Vekos was called to a crime scene in Bridport late in the evening. Soon after she arrived (having driven herself there), police officers suspected that she was under the influence. The decision was made to confront her, at which time the first body camera was activated. Ms. Vekos is alleged to then have refused to perform field sobriety tests and become upset and argumentative.

At that point, the police arrested her, put her in a police vehicle, and took her to the New Haven State Police Barracks for processing.

The *Vaughn* index describes the records at issue in this case. They include the body camera footage of Sergeant Eden Neary and Trooper Kelsey Dobson, which reflects most of the police interactions with Ms. Vekos from when the first body camera was activated until she arrived at the barracks. They also include footage within the barracks, apparently from several fixed cameras, taken during Ms. Vekos's processing.

III.    Analysis

Both of the exemptions asserted in this case address records "dealing with the detection and investigation of crime." 1 V.S.A. § 317(c)(5). Exemption (c)(5), in relevant part, provides:

> (c) The following public records are exempt from public inspection and copying:
>
> .   .   .
>
> (5)(A) Records dealing with the detection and investigation of crime, but only to the extent that the production of such records:
>
>> (i) could reasonably be expected to interfere with enforcement proceedings;
>>
>> (ii) would deprive a person of a right to a fair trial or an impartial adjudication;
>
> .   .   .
>
> (B) Notwithstanding subdivision (A) of this subdivision (5) . . . records reflecting the initial arrest of a person, including any ticket, citation, or complaint issued for a traffic violation, as that term is defined in 23 V.S.A. § 2302; and records reflecting the charge of a person shall be public.
>
> (C) It is the intent of the General Assembly that in construing subdivision (A) of this subdivision (5), the courts of this State will be

guided by the construction of similar terms contained in 5 U.S.C. § 552(b)(7) (Freedom of Information Act [FOIA]) by the courts of the United States.

The analogous FOIA provisions are:

| Enforcement | Fair trial |
|---|---|
| 1 V.S.A. § 317(c)(5)(A)(i) | 1 V.S.A. § 317(c)(5)(A)(ii) |
| 5 U.S.C. § 552(b)(7)(A) | 5 U.S.C. § 552(b)(7)(B) |

There are no reported Vermont Supreme Court cases addressing the relevant subdivisions of the Vermont exemption.

In briefing, DPS cites both exemptions, but largely relies on the standards applicable to the FOIA interference-with-enforcement exemption as though it entirely subsumes the fair trial exemption. The exemptions are by no means interchangeable. The enforcement exemption is subject to a relatively more lenient "could reasonably be expected" standard than the fair trial exemption's "would deprive a person" standard.[2]

Further, the "usual rationale[s] given for [applying FOIA Exemption 7(A)] is the danger of witness intimidation, the witness' desire to maintain confidentiality, and concern that premature disclosure would create a chilling effect on potential witnesses and dry up sources of information." *Manna v. U.S. Dep't of Just.*, 51 F.3d 1158, 1164 (3d Cir. 1995) (citation omitted); *see generally NLRB v. Robbins Tire and Rubber Company*,

---

[2] Additionally, a modified, "functional," categorical approach to nondisclosure, which is well documented in federal case law, also is available under the enforcement exemption but not the fair trial exemption. *But see Hier v. Slate Valley Unified Sch. Dist.*, 2025 VT 2, ¶ 14 n.3 (asserting in *dicta* that the Court's adoption in *Rutland Herald v. Vermont State Police*, 2012 VT 24, 191 Vt. 357, of a bright-line categorical approach to 1 V.S.A. § 317(c)(5) remains "good law" following an amendment to § 317(c)(5) that now incorporates federal standards, which appear inconsistent with *Rutland Herald*); *see* the Court's dismissal decision in this case—which preceded the *Hier* decision—discussing the amendment vis-à-vis *Rutland Herald*. Given the Court's resolution of the exemptions asserted here, it need not grapple with the breadth of the ruling in *Hier*.

437 U.S. 214 (1978) (discussing this exemption at length, explaining in the context of the case that premature disclosure of witness statements would risk witness intimidation, and stating that "[f]oremost among the purposes of this Exemption was to prevent 'harm [to] the Government's case in court,' by not allowing litigants 'earlier or greater access' to agency investigatory files than they would otherwise have" (citations omitted)).

Federal case law under Exemption 7(A) is thoroughly canvassed in the Department of Justice Guide to the Freedom of Information Act, Exemption 7(A), available at https://www.justice.gov/oip/doj-guide-freedom-information-act-0. Various rationales supporting nondisclosure have included: disclosure of lists of names that could be used by terrorists; production that could improperly reveal insight into litigation strategy or prematurely reveal the scope and direction of an investigation or case; release of investigation methodologies that depend on confidentiality could be revealed; disclosure of the existence or identity of witnesses might be prematurely revealed; surveillance might be thwarted.

As the Guide concludes, "[c]ourts have upheld the application of Exemption 7(A) when release of the protected information would reveal the nature, scope, direction, or focus of an investigation, which could damage the government's ability to control or shape its investigation. The release of such information could allow targets to elude detection, suppress or fabricate evidence, or prevent the government from obtaining information in the future." Guide at 14–16 (footnotes omitted). "Courts have held that Exemption 7(A) ordinarily will *not* afford protection when the target of the investigation has possession of, or has submitted, the information in question or the agency has made it public." *Id*. at 18 (emphasis added, footnote omitted).

Exemption 7(B), by contrast, "is aimed at preventing prejudicial pretrial publicity that could impair a court proceeding." Guide to the Freedom of Information Act, Exemption 7(B) at 1. "In practice, this exemption is rarely invoked." *Id.* "The threat of interference to a trial must relate to the fairness of its ultimate outcome as a whole." 33 Richard Murphy, *et al., Fed. Prac. & Proc. Judicial Review* § 8472 (2d ed.). Courts have noted that the exemption " was meant to prevent disclosures from conferring an unfair advantage upon one party to an adversary proceeding or leading to prejudicial publicity in pending cases that might inflame jurors or distort administrative judgment." *Washington Post Co. v. U.S. Dept. of Justice*, 863 F.2d 96, 101 (D.C. Cir. 1988); *see also id.* at 102 ("Congress made the threshold of (7)(B) higher than for most of the other exemptions for law enforcement material. Whereas (7)(A), (C), (D) and (F) permit records to be withheld if release 'could reasonably be expected to' cause a particular evil, (7)(B) requires that release 'would' deprive a person of fair adjudication.").

"[T]o withstand a challenge to the applicability of (7)(B) the government bears the burden of showing: (1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." *Id.* at 102. Fairness relates to the "overall fairness" of the proceeding. *Chiquita Brands Intern. Inc. v. S.E.C.*, 805 F.3d 289, 298 (D.C. Cir. 2015).

There is no dispute that Ms. Vekos and her defense attorney already have access to the records withheld in this case. The only seriously asserted basis for withholding them from VTDigger is that production would attract more media attention and

jeopardize a fair trial by causing bias among members of the public who might be selected to be on the jury in the criminal case. This is fully apparent in the affidavit from the prosecutor in the criminal case, who explains:

6. Every aspect of Ms. Vekos' presentation on the night of January 25, 2024, including the way she speaks, what she says, the way her face appears, her interactions, her coordination and movement, her demeanor, etc., is at issue in the trial and will be the subject of the jury's determinations regarding her guilt.

7. The undersigned intends to use the requested footage in trial as evidence of Ms. Vekos' guilt and believes it is imperative that the jurors view this evidence in the context of a trial and not through a media source or any other preview outside of the courtroom.

8. The requested footage is also evidence that relates to the reasonableness of the officers' questioning of Ms. Vekos and their conduct in response to her actions. The undersigned anticipates that the officers' questioning and conduct will be challenged by Ms. Vekos' defense counsel, Mr. Sleigh. Again, the undersigned believes it is imperative that the jurors view this evidence and hear the arguments in the context of a trial and not through a pre-trial media source or any other preview outside of the courtroom.

9. All three officers that appear in the withheld footage, Trooper Kelsey Dobson, Sergeant Eden Neary, and Detective Trooper Ryan Anthony, are expected to testify at the trial.

10. The release of the requested footage prior to the trial could reasonably be expected to interfere with the proceedings by unnecessarily exerting influence on potential jurors' perceptions of Ms. Vekos and the witnesses, including whether they are credible, as well as the evidence to be presented at trial.

11. The disclosure of the records to the media in this case carries a substantial risk of tainting jury impartiality and witness testimony because of the heightened media coverage and interest in Ms. Vekos' arrest, subsequent communications with law enforcement, medical leave, and bar license. Ms. Vekos, like any other defendant, is entitled to a fair trial and the evidence should be fairly considered by a jury of her peers, in the context of a trial.

Affidavit of Rosemary Kennedy (filed Dec. 11, 2024).[3]  No jury yet has been selected in the criminal case.  The apparent rationale for nondisclosure, therefore, is that more publicity will make it harder to pick an impartial jury.

This rationale squarely falls within the fair trial exemption.  While the interference-with-enforcement exemption is broad, DPS's evident position—embraced at oral argument—that it is reasonably interpreted to completely swallow the fair trial exemption, has no basis in the law.  Ordinarily, statutes are not interpreted to render any of their provisions to be complete nullities.  *In re Mountain Top Inn & Resort*, 2020 VT 57, ¶ 37, 212 Vt. 554, 574 ("We consider 'the whole and every part of the statute,' and avoid a construction 'that would render part of the statutory language superfluous.'" (citations omitted)).  Other than here, the Court has been able to identify only one case in which a party even impliedly argued that the interference exemption properly swallows the fair trial exemption, and the Court in that case made quick work of the matter:

> [T]he FBI's concerns regarding the effects of disclosure on jury impartiality are properly raised under Exemption 7(B), and not under Exemption 7(A).  Exemption 7(A) applies to records "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings."  There is a separate exemption for records the disclosure of which "would deprive a person of a right to a fair trial or an impartial adjudication."  The FBI has not argued that Exemption 7(B) applies to any of the records withheld here, however.  Nor has the FBI identified any case holding that Exemption 7(A) applies to records the disclosure of "which could impair the . . . ability to seat a fair and impartial jury"—and this Court has not discovered any such case.
>
> As the D.C. Circuit recently noted, "Exemption 7(B) applies only when the disclosure of law enforcement records would deprive a person of the right to 'a fair trial or an impartial adjudication[ ]' . . . [and] the word 'trial' means the ultimate determination of factual and legal claims by judge

---

[3] To the extent that anything in Ms. Kennedy's affidavit falls within the enforcement exemption, any such allegations are far too conclusory to warrant any relief.

or jury in a judicial proceeding." "Congress made the threshold of (7)(B) higher than for [7(A)] . . . Whereas (7)(A), (C), (D) and (F) permit records to be withheld if release 'could reasonably be expected to' cause a particular evil, (7)(B) requires that release 'would' deprive a person of fair adjudication."

It appears unlikely that Congress intended that Exemption 7(A) apply to documents "which could reasonably be expected to impair the . . . ability to seat a fair and impartial jury." That reading of Exemption 7(A) would swallow Exemption 7(B), despite the latter's heightened standard and distinct requirements.

*Radar Online LLC v. Federal Bureau of Investigation*, 692 F.Supp.3d 318, 344 n.10 (S.D.N.Y. 2023) (citations omitted).

This case falls under the fair trial exemption at 1 V.S.A. § 317(c)(5)(A)(ii), to which FOIA standards under 5 U.S.C. § 552(b)(7)(B) apply, as required by 1 V.S.A. § 317(c)(5)(C). DPS has not effectively shown in law or fact that the enforcement exemption is properly asserted in this case.

There can be no doubt that a trial is pending. The only remaining question is whether it is "more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." *Chiquita Brands Intern. Inc. v. S.E.C.*, 805 F.3d 289, 298 (D.C. Cir. 2015). As described above, this exemption sets an exacting standard. Washington Post Co., 863 F.2d at 102 (showing needed under § 552(7)(b) is "higher than for most of the other exemptions for law enforcement materials"). DPS has not satisfied its burden of showing that it meets that high threshold.

To the extent that Ms. Kennedy's affidavit suggests that publicity stoked by disclosure might bias *some* potential jurors, the allegation is conclusory and does not support the conclusion that release "would" make the actual trial unfair. *Washington*

*Post Co.*, 863 F.2d at 101 ("burden cannot be met by mere conclusory statements; the agency must show how release of the particular material would have the adverse consequence that the Act seeks to guard against").

More importantly, however, even if the Court were to assume exactly that, nowhere in the record does DPS address the most important circumstances weighing on the question of disclosure here—that no jury yet has been chosen in the criminal case, that the jury selection process that the criminal court will undertake before a jury is seated is designed precisely to ensure that the jury chosen will be fair and impartial, and that any such jury would be instructed not to do research or view media coverage of the events. There is no allegation whatsoever to the effect that disclosure will make the selection of a fair and unbiased jury impossible or unreasonably onerous. The videos include the audio and visual aspects to what interested members of the public already know.

The Court cannot conclude in these circumstances that disclosure would seriously interfere with the ultimate fairness or impartiality of the trial under the standards of exemption § 317(c)(5)(A)(ii). *See Whitlock v. United States Dep't of Def.*, No. 20-CV-3246 (JMC), 2025 WL 721876, at *10 (D.D.C. Mar. 6, 2025) ("But the mere fact that a pool of potential jurors (or here, Board of Inquiry members) might be exposed to publicity about a case—even per[v]asive, adverse publicity—does not satisfy Exemption 7(B)'s high standard." (citation and internal quotation omitted)); *Chiquita Brands Int'l, Inc. v. United States Sec. & Exch. Comm'n*, 10 F. Supp. 3d 1, 5 (D.D.C. 2013), *aff'd sub nom.* 805 F.3d 289 (D.C. Cir. 2015) ("Chiquita's speculation about potential publicity and its effect on a future jury in the Florida Litigation does not satisfy the level of certainty required

by FOIA Exemption 7(B). The relevant test is not whether pretrial publicity 'could' impact fairness or impartiality. Exemption 7(B) expressly requires that disclosure 'would' compromise the fairness of a proceeding." (citation omitted))

Our PRA itself provides that it is to be liberally construed in favor of disclosure. 1 V.S.A. § 315. Exemptions to production of the people's records are to be narrowly cabined within the exceptions specifically limned by the Legislature. *Price,* 2011 VT 48, ¶ 13, 190 Vt. 66, 72–73. In this case, DPS has not satisfied its burden of establishing grounds to withhold the requested records, in part or in whole. VTDigger is entitled to summary judgment on that basis.

Because the records must be produced in their entirety, there is no need to consider the scope of the initial arrest exception to the exemptions.[4]

---

[4] The Court notes, however, that DPS's argument that the arrest exception somehow would not apply, at least, to some of the withheld records is likely inaccurate. The arrest exception is absolute: there is no balancing test. If records are otherwise properly withheld under 1 V.S.A. § 317(c)(5)(A), they nevertheless must be disclosed if they reflect "the initial arrest of a person" under 1 V.S.A. § 317(c)(5)(B). Video footage of police interactions with a DUI suspect before, during, and after the arrest—at least to some extent—likely include depictions of the "initial arrest." No doubt, the proper breadth of the term *initial arrest* is especially unclear in Vermont case law. *See* the mandate in *Galloway v. Town of Hartford,* 2012 VT 61, 192 Vt. 171, 178 (appearing to compel production of all records generated before, during, and after a "de facto" arrest, without any apparent limitation, as records of an initial arrest). The issue need not be sorted out in this case, however.

## Conclusion

For the foregoing reasons, DPS's motion for summary judgment is denied, and VTDigger's is granted. Consistent with this Order, DPS shall produce all withheld records to VTDigger within 10 days.

Electronically signed on May 9, 2025, per V.R.E.F. 9(d).

_____
Timothy B. Tomasi
Superior Court Judge