# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued December 8, 2014                    Decided July 17, 2015

No. 14-5030

CHIQUITA BRANDS INTERNATIONAL INC.,
APPELLANT

v.

SECURITIES AND EXCHANGE COMMISSION AND NATIONAL
SECURITY ARCHIVE,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00435)

---

*Mark H. Lynch* argued the cause for appellant. With him on the briefs were *James M. Garland*, *Mark W. Mosier*, *Ashley M. Sprague*, and *Jaclyn E. Martínez Resly*.

*Sarah E. Hancur*, Senior Counsel, Securities and Exchange Commission, argued the cause for appellee Securities and Exchange Commission. With her on the brief were *Melinda Hardy* and *Thomas J. Karr*, Assistants General Counsel.

*Adina H. Rosenbaum* argued the cause for appellee National Security Archive. With her on the brief was *Michael T. Kirkpatrick*. *Jeffrey S. Gutman* entered an appearance.

Before: GRIFFITH, KAVANAUGH, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*:

Pursuant to the Freedom of Information Act, the National Security Archive requested investigative materials that the Securities and Exchange Commission had gathered involving payments made to paramilitary groups in Colombia by a subsidiary of Chiquita Brands International. Chiquita requested that the Commission deny the Archive's request, arguing that releasing the records at this point in time would deprive the company of a fair trial in pending multi-district litigation in Florida. Neither the Commission nor the district court hearing this reverse-FOIA action thought release would deprive Chiquita of a fair trial. We agree with them.

I

A familiar brand in American households, Chiquita produces, markets, and distributes bananas and other produce worldwide. During the time relevant to this appeal, Chiquita worked in Colombia through a subsidiary known as Banadex.

In 2001, Chiquita reached a cease-and-desist settlement with the Securities and Exchange Commission regarding charges that Banadex violated the Securities Exchange Act of 1934 by failing to accurately record certain payments made to

local officials in Colombia. In 2007, following further investigation of Banadex by the Justice Department (DOJ), Chiquita pled guilty in the United States District Court for the District of Columbia to a single felony count under 50 U.S.C. § 1705(b) (2006) and 31 C.F.R. § 594.204 of engaging in unauthorized transactions with Autodefensas Unidas de Colombia (AUC), a group that the federal government had designated as a global terrorist organization. During the course of the DOJ's investigation, Chiquita acknowledged that Banadex had made the payments demanded by AUC but insisted the company did so only to protect its Colombian employees from being kidnapped, injured, and murdered. Chiquita produced thousands of documents related to those payments to investigators from the DOJ and the Commission, requesting that the Commission treat the records it received confidentially and not release them under the Freedom of Information Act (FOIA). *See* 17 C.F.R. § 200.83 (detailing the SEC's confidential treatment procedures). In 2011, the DOJ released over 5,500 pages of these documents to the National Security Archive (Archive) under FOIA. The collection, which is available to the public on the Archive's website, includes notes, memoranda, and internal communications regarding Banadex's payments to AUC and other armed groups in Colombia.

The Archive describes itself as a non-profit library located at George Washington University in Washington, D.C., that, among other things, collects and publishes declassified documents related to U.S. national security. In 2000, the Archive initiated its Colombia Documentation Project—a campaign that has led to the filing of nearly 3,000 FOIA requests with various federal agencies for documents related to issues involving the United States and Colombia, such as narcotics trafficking, drug cartels, and paramilitary

groups. The Archive filed two FOIA requests with the SEC in November 2008 seeking documents related to the federal investigations of Banadex that led to the cease-and-desist settlement and the guilty plea, as well as any documents from 1989 onward in the SEC's possession relating to the company's finances. The Commission identified approximately twenty-three boxes of responsive documents that Chiquita had submitted, including forms describing the date and amount of payments made to paramilitary groups, as well as the identities of those who authorized the payments; accounting memoranda prepared by Banadex employees; receipts, ledgers, and spreadsheets documenting the payments; legal documents, internal reports, auditors' notes, and other internal correspondence analyzing and discussing the payments; and transcripts of depositions taken of Chiquita's employees. This appeal involves those documents the Commission identified that relate to Banadex's payments to AUC and other such groups, some of which appear to be similar to the records already released to the Archive by the DOJ in 2011.

When the Commission receives a FOIA request and determines that the documents requested should be released, its regulations require the Commission to send notice of this decision to the confidential treatment requestor that originally produced the documents to the Commission and asked that they not be released under FOIA (Chiquita, in this case). 17 C.F.R. § 200.83(d)(1). The requestor must then submit a written statement to the Commission's Office of Freedom of Information and Privacy Act Operations (or Office of FOIA Services) substantiating the original confidential treatment request and explaining "why the information should be withheld from access" under FOIA. *Id*. § 200.83(d)(2)(i). The Office then issues a preliminary decision to grant or reject the

request. *Id*. § 200.83(e)(1). A requestor that disagrees with the preliminary decision of the Office may submit supplemental arguments and request a final decision. *Id.* An adverse final decision can be appealed to the Commission's General Counsel, whose decision is reviewable in federal court. *Id*. § 200.83(e)(3), (5).

Chiquita is now embroiled in multi-district litigation in the United States District Court for the Southern District of Florida brought by Colombian citizens who allege that Chiquita and some of its former officers should be held liable for making payments to paramilitary organizations such as AUC that tortured and murdered the plaintiffs and their families. These plaintiffs originally raised federal claims under the Alien Tort Statute and the Torture Victim Protection Act, as well as claims under state and Colombian law. Since 2008, discovery has been stayed while the parties litigated jurisdictional issues that the district court certified for interlocutory review. Although the federal claims against Chiquita have been dismissed as a result of that interlocutory appeal, *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014), other claims remain pending. Chiquita and its fellow defendants have filed motions to dismiss and discovery remains stayed until those motions are resolved. *See* Order Granting Pls.' Emergency Mot. for Leave to Take Depositions 5, No. 0:08-01916-KAM (S.D. Fla. April 7, 2015) (Dkt. No. 759); *see id*. at 18-19 (partially lifting the discovery stay to permit the parties to engage in certain limited discovery).

II

When told of the Archive's FOIA request, Chiquita invoked FOIA Exemption 7(B) in its plea to the

Commission's Office of FOIA Services that the documents be withheld from the Archive. *See* 5 U.S.C. § 552(b)(7)(B). Their release, Chiquita asserted, would deprive the company of a fair trial in the Florida litigation. Because the Archive is directly affiliated with and actively supports the Florida plaintiffs' counsel, Chiquita argued, releasing these confidential documents to the Archive would be tantamount to giving them to the plaintiffs. Doing so would be an end-run around the protections afforded the defendants in the discovery process yet to be established in the Florida litigation. That court, Chiquita maintained, ought to be the arbiter of what information the plaintiffs may see and use. Otherwise, the plaintiffs might gain premature access to documents relevant to their claims and enjoy an unfair advantage. The Office rejected Chiquita's argument. Chiquita tried again, and once more, the Office said no.

Chiquita appealed its loss to the Commission's General Counsel, arguing that release of the records would interfere with the fairness of the Florida litigation by providing the plaintiffs with early and unilateral access to relevant documents without a protective order in place, and by generating pretrial publicity that would taint future jurors. Chiquita, however, did not assert that the Florida plaintiffs would be unable to get these documents through discovery and conceded that it will produce the documents to its opponents when and if they become available through discovery.[1] The General Counsel concluded that no undue advantage would come from the plaintiffs gaining access to

---

[1] Chiquita informed the Commission that some of the documents the Archive requested contain privileged legal work product that would be protected from discovery in the Florida litigation. The company no longer advances that argument.

these documents through FOIA before they could obtain them through discovery and that their release without a protective order would not result in adverse pretrial publicity that would bias jurors.

In April 2013, Chiquita filed this action in the United States District Court for the District of Columbia, arguing that the Commission's failure to apply Exemption 7(B), and its refusal to apply certain redactions Chiquita requested, were arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706. *Chiquita Brands Int'l v. SEC*, 10 F. Supp. 3d 1 (D.D.C. 2013). The Archive intervened on the Commission's behalf. The district court granted summary judgment to the Commission, finding, as relevant here, that there was "no doubt that the SEC rationally determined from the record that disclosure . . . would not seriously interfere with the fairness of the Florida litigation." *Id*. at 5.

Chiquita appealed only the district court's holding related to Exemption 7(B). Having abandoned its claim that release of the documents would deprive the company and its officers of an unbiased jury, Chiquita argues only that Exemption 7(B) should bar the release of all documents relevant to the Florida litigation until discovery in that case begins and Chiquita can apply for a protective order. We granted an injunction barring their release pending resolution of this case, and we have jurisdiction under 28 U.S.C. § 1291. "In a case like [this], in which the District Court reviewed an agency action under the APA, we review the administrative action directly, according no particular deference to the judgment of the District Court." *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 814 (D.C. Cir. 2002). We review de novo the Commission's interpretation of FOIA. *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001). We will uphold the Commission's application of Exemption

7(B) to the facts here unless its decision was arbitrary, capricious, or unlawful. 5 U.S.C. § 706(2)(A).

## III

FOIA "requires government agencies to make public virtually all information that is not specifically exempted from disclosure under the Act." *North v. Walsh*, 881 F.2d 1088, 1093-94 (D.C. Cir. 1989). Government agencies must generally release requested records without regard to the identity or motive of the requestor. *See, e.g.*, *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n.23 (1978) (holding that a FOIA requestor's rights are neither "diminished" nor "enhanced" in light of a "particular, litigation-generated need for these materials"). In consequence, FOIA sometimes enables litigants to obtain documents that would otherwise be unavailable, or less readily available, through the discovery process. *North*, 881 F.2d at 1099 ("[A]n individual may . . . obtain under FOIA information that may be useful in non-FOIA litigation, even when the documents sought could not be obtained through discovery."). "Because FOIA establishes a strong presumption in favor of disclosure . . . requested material must be disclosed unless it falls squarely within one of the nine exemptions carved out in the Act." *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996). We construe these exemptions narrowly and place the burden of proof on the party opposing disclosure. *See, e.g.*, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015) ("FOIA's exemptions are explicitly made exclusive and must be narrowly construed." (internal quotation marks omitted)); *Jurewicz v. U.S. Dep't of Agric.*, 741 F.3d 1326, 1334 (D.C. Cir. 2014) (noting that a party who opposes an agency's decision to disclose records

under FOIA "must demonstrate that [the agency's] conclusion is arbitrary and capricious or contrary to law").

Chiquita relies on FOIA Exemption 7(B), which protects against the release of "records or information compiled for law enforcement purposes [the disclosure of which] . . . would deprive a person of a right to a fair trial or an impartial adjudication." 5 U.S.C. § 552(b)(7)(B). In *Washington Post Co. v. U.S. Dep't of Justice*, we held that Exemption 7(B) requires a showing "(1) that a trial or adjudication is pending or truly imminent; and (2) that it is more probable than not that disclosure of the material sought would seriously interfere with the fairness of those proceedings." 863 F.2d 96, 102 (D.C. Cir. 1988). The parties agree that the Florida litigation satisfies the "pending or truly imminent" judicial proceeding prong of this test. They dispute only whether release of the records "would seriously interfere with the fairness of those proceedings."

To that end, the Commission and the Archive argue that the exemption should apply only if releasing the records would interfere with the fairness of the trial and thereby affect the overall fairness of the proceeding. The General Counsel applied that standard to reject Chiquita's request for confidential treatment, reasoning that Chiquita failed to show how releasing the records could confer an unfair advantage on the Florida plaintiffs that more likely than not would affect the fairness of an eventual trial. Chiquita disagrees, arguing that the way we construed Exemption 7(B) in *Washington Post* prevents an agency from granting a FOIA request for law enforcement records whenever litigation is pending and the documents requested are not yet available in discovery. To Chiquita, granting access to law enforcement records through FOIA when the same records are not yet available in

discovery necessarily confers a litigating advantage on a party during the discovery phase of an adversarial proceeding. Exemption 7(B) thus bars release of records under such circumstances, according to Chiquita, without regard to whether any advantage conferred during the pretrial process could impact the fairness of the trial.

We agree with the Commission.

## A

### 1

"Our consideration of Exemption [7(B)]'s scope starts with its text." *Milner v. Dep't of the Navy*, 562 U.S. 562, 569 (2011). By its own terms, Exemption 7(B) applies only when the disclosure of law enforcement records would deprive a person of the right to "a fair trial or an impartial adjudication." 5 U.S.C. § 552(b)(7)(B). It has long been settled that the word "trial" means the ultimate determination of factual and legal claims by judge or jury in a judicial proceeding. *See, e.g.*, *Carpenter v. Winn*, 221 U.S. 533, 539 (1911) (defining the term "trial" in a federal statute, in accordance with its common law definition, as "that step in an action by which issues or questions of fact are decided" and as "that final step" in a legal proceeding involving "judicial examination of both matters of fact and law" (internal quotation marks omitted)); *United States v. Ray*, 578 F.3d 184, 196 (2d Cir. 2009) ("A trial resolves disputed questions of law and fact; it is 'a judicial examination and determination of issues between parties to an action[.]'") (quoting BLACK'S LAW DICTIONARY 1504 (6th ed. 1990) (internal brackets omitted)); 64 CORPUS JURIS *Trial* § 2 (1933) ("The term 'trial' contemplates a final disposition of the controversy, either on

the facts or on a question of law[.]"). Assuming that Congress used the word "trial" in light of its long-settled meaning, we agree with the Commission and the Archive that Exemption 7(B) comes into play only when it is probable that the release of law enforcement records will seriously interfere with the fairness of "that final step which is called 'the trial.'" *Carpenter*, 221 U.S. at 539.

Chiquita asks us to disregard the phrase "fair trial" and focus instead on Exemption 7(B)'s protection of an "impartial adjudication," 5 U.S.C. § 552(b)(7)(B), reasoning that the term "adjudication" applies to a decision made at any point during a judicial proceeding (such as discovery). But in other contexts, the Supreme Court and we have interpreted "adjudication" as it appears in FOIA by referring to the definition contained in the Administrative Procedure Act (to which FOIA belongs), where "adjudication" is defined as the "agency process for the formulation of an order," 5 U.S.C. § 551(7). *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 158 (1975); *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 602 (D.C. Cir. 2001). Further, the Attorney General's memorandum on the 1974 FOIA amendments takes the position that "adjudication" as used in Exemption 7(B) refers to quasi-judicial decisionmaking by federal and state administrative agencies. DEP'T OF JUSTICE, ATTORNEY GENERAL'S MEMORANDUM ON THE 1974 AMENDMENTS TO THE FREEDOM OF INFORMATION ACT 8-9 (1975), *reprinted in* House Committee on Government Operations and Senate Committee on the Judiciary, *Freedom of Information Act and Amendments of 1974 (P.L. 93-502)*, 94th Cong., 1st Sess., 507, 518-19 (Jt. Comm. Print 1975); *cf. FCC v. AT&T Inc.*, 562 U.S. 397, 409 (2011) (describing the Attorney General's memorandum as "a reliable guide in

interpreting FOIA").[2] We thus think that the phrase "impartial adjudication" as it appears in the statute refers to determinations made by administrative agencies, not to pretrial decisions issued by a judge. Instead, Congress chose the language it did in Exemption 7(B) to guarantee parallel protections of fundamental fairness to parties involved in both judicial proceedings ("trial") and administrative proceedings ("adjudication").

Chiquita makes the additional point that a party's right to a fundamentally fair decisionmaking process can be denied through any number of events that happen before the trial. Undoubtedly so. But Chiquita is wrong to urge that a slight advantage conferred on a party in a single phase of a case necessarily threatens the fairness of the trial. That position defies the text of Exemption 7(B), which tells us to assess the significance of any alleged unfairness in light of its effect on the trial and thus on the proceedings as a whole.

2

Though Chiquita insists otherwise, in *Washington Post* we applied this same standard, focusing on whether the release of law enforcement records would seriously interfere with the fairness of the proceedings as a whole. Chiquita points to a single sentence in our opinion where we noted the possibility that "disclosure through FOIA would furnish access to a document not available under the discovery rules and thus would confer an unfair advantage on one of the parties." 863 F.2d at 102. To Chiquita, this sentence stands for two propositions. First, Exemption 7(B) bars a release of law

---

[2] We do not address in this case the scope of administrative proceedings to which Exemption 7(B) applies.

enforcement records that would give one party a leg up on its adversary during pretrial discovery, no matter whether that advantage has an impact on the outcome of the trial. Second, an unfair advantage automatically results where the records requested through FOIA are, as here, not yet available through discovery, even though they will be discoverable when the time comes. But *Washington Post* does not support such a broad reading of the exemption.

In that case, a newspaper reporter submitted a FOIA request to the DOJ, which was investigating allegations that pharmaceutical manufacturer Eli Lilly marketed an arthritis drug, Oraflex, to Americans while neglecting to tell regulators or consumers that the drug had caused severe adverse reactions among patients overseas. In the face of pending product-liability and shareholder litigation, Eli Lilly commissioned a special committee of outside directors to conduct an internal investigation into the development and marketing of the drug and assess the company's exposure to liability and its available legal options. That committee produced a comprehensive report that "evaluate[d] [Eli Lilly's] past conduct, defenses, liabilities and potential civil claims against others" arising out of the Oraflex incident. *Washington Post*, 863 F.2d at 100. After Eli Lilly produced the report to the DOJ, the Post made a request for the document under FOIA. The DOJ denied that request based, in part, on Exemption 7(B). When the Post challenged this decision, the district court agreed with the government.

Neither the DOJ nor Eli Lilly advanced Chiquita's theory that Exemption 7(B) bars disclosure when discovery has yet to begin. Instead, they argued that disclosing the directors' report would taint potential jurors who would eventually decide the question of Eli Lilly's liability for marketing

Oraflex. *See* Eli Lilly Br. at 37 (arguing that "the Report, if disclosed, would receive widespread attention" and the "self-critical statements" it contained would prove "extremely prejudicial" in future tort actions against Eli Lilly); Dep't of Justice Br. at 44 (arguing that releasing the report would allow "the jury-selection process" to be "hamstrung" by exposing jurors to the "extensively publicized" contents). Although both the DOJ and Eli Lilly asserted that the directors' report would be protected by the self-evaluative privilege and therefore unavailable to the company's opponents in discovery, they did not argue that this fact alone would deprive the company of a fair trial. Nor did they claim that disclosing the report would give Eli Lilly's adversaries an unfair head start at case development. Instead, they emphasized that the concerns about prejudicing future jurors were heightened in light of the possibility that the report would otherwise be permanently unavailable to the company's opponents in discovery. *See* Eli Lilly Br. at 37 (arguing that "particularly in light of [Eli] Lilly's privilege against producing the Report in civil litigation," the company should not be "subjected to the possibility" of having its liability adjudicated "before jurors who have learned the contents of the Report outside the courtroom"); Dep't of Justice Br. at 44 (arguing that there was "a concrete prospect that courts . . . may hold the report at issue privileged").

These arguments provide necessary context for our observation in *Washington Post* that disclosure of the report of the outside directors, a document unavailable in discovery, would grant the company's adversaries an "unfair advantage" and thus deprive Eli Lilly of a fair trial. 863 F.2d at 102. Contrary to Chiquita's reading of *Washington Post*, we examined whether releasing the directors' report would likely cause unfairness that could affect an eventual trial, and not

simply disadvantage Eli Lilly in discovery. We made clear that a party invoking Exemption 7(B) must show that disclosure would impair his right to a fair trial, not merely that disclosure would temporarily disadvantage him during a single stage of a judicial proceeding. Writing on what we called a "virtually clean slate," we "fram[ed] a test" by focusing on "[w]hat is required to establish that production of a document [through FOIA] would deprive a person of a right to a *fair trial*." *Id*. at 101 (emphasis added). We answered that question by concluding that Exemption 7(B) applies only where a "trial" (or "adjudication") is pending and it is more probable than not that disclosure would "seriously interfere with the fairness of those proceedings." *Id*. at 102. Applying that test, we emphasized that the DOJ and Eli Lilly had to show on remand that disclosure of the report would deprive the company "of a fair trial." *Id*.

Nor did we say in *Washington Post* that Exemption 7(B) always forbids releasing records if litigants in a pending case would be unable to access them (yet or ever) through discovery. No party in *Washington Post* urged us to adopt such a broad holding, and the arguments that were before us dispel any notion that we did so. Instead, we reiterated that FOIA exemptions are to be "construed narrowly" in favor of disclosure. 863 F.2d at 101. And in a case decided just months later, we observed that by virtue of the language Congress chose, FOIA allows litigants to access documents that are not available in discovery. *North*, 881 F.2d at 1099. Chiquita's reading of our opinion in *Washington Post* instead stretches Exemption 7(B) far beyond its text to bar wholesale the release of law enforcement records whenever they are not discoverable and regardless of whether disclosure threatens the fairness of the trial itself. Even further, *Washington Post* involved a document that the parties argued was privileged

and completely protected from discovery, not—as here—documents that Chiquita concedes the plaintiffs might get one day, just not yet.

True, we did observe that, if the special report was unavailable through discovery, its release "would confer an unfair advantage on one of the parties." *Washington Post*, 863 F.2d at 102. But that observation must be read in the context of the strategic magnitude of that particular report and the obvious unfair advantage such an important document would likely confer throughout an entire case if released to the Post and published widely to potential jurors when a jury might never have seen the report at all due to its privileged status. In short, we construed Exemption 7(B) narrowly and according to its text, the same way the Commission did here: to apply when the release of documents would likely deprive a party of a fair trial, not merely complicate the discovery schedule.

3

Chiquita responds that even if Exemption 7(B) protects only the overall fairness of a judicial proceeding, the Commission did not apply such a standard. We disagree. The Commission properly disposed of Chiquita's arguments on the ground that the company could not show how disclosure would matter in the big picture and impact the fairness of a future trial.[3] This is the proper legal standard under both the

---

[3] In evaluating Chiquita's claim that releasing the records would taint potential jurors, the General Counsel consulted the Supreme Court's jurisprudence about when pretrial publicity adverse to a criminal defendant justifies a change in venue. Chiquita is wrong that the General Counsel thereby held Chiquita had to prove that disclosure would deprive the company of its *constitutional* right to a fair trial. The General Counsel merely

text of Exemption 7(B) and *Washington Post*, and although the Commission's counsel described this standard on appeal using a new phrase ("overall fairness"), we have never held that an agency on appeal is limited to reciting only the very words in the challenged order. The Commission observed correctly that Exemption 7(B) protects the right to a fair trial, and maintains the consistent position before us that Exemption 7(B) protects the overall fairness of a judicial proceeding of which decisionmaking at trial is the touchstone.

B

Finally, we think the Commission reasonably applied Exemption 7(B) and concluded that disclosure of the records to the Archive will not "seriously interfere with the fairness" of the Florida proceedings. *Washington Post*, 863 F.2d at 102.

The Commission reasonably determined that Chiquita had not met its burden of showing how releasing the law enforcement records to the Archive would deprive the company or its officers of a fair trial. Chiquita did not explain how any temporary head start conferred on the Florida plaintiffs could render any trial in that litigation unfair by depriving Chiquita of the full and fair opportunity to present its case. Nor did Chiquita distinguish any momentary upper hand at fact-gathering gained here from any other situation in which one party obtains valuable information from witnesses and other third parties outside the formal discovery process while under no obligation to produce similar information to

---

found it helpful to consider the Supreme Court's guidance in an analogous setting. As Chiquita no longer challenges the General Counsel's decision regarding pretrial publicity, we need not consider whether he reached the correct conclusion.

its adversaries. *Cf. Am. Bank v. City of Menasha*, 627 F.3d 261, 265 (7th Cir. 2010) ("The word 'discovery' is not a synonym for investigation. Much of the information gathering that litigants do is not 'discovery' as the term is understood in the law."). The company did not even address whether the district court could easily rectify any fleeting advantage in information-gathering when the parties eventually meet to develop a formal discovery schedule. By presenting no argument at all to the Commission on these obvious points, Chiquita failed to meet its burden of showing how any asymmetry in information exchange could affect an eventual trial in the Florida litigation. Instead, the company erroneously rested on the legal theory that it simply had to show the documents sought are presently unavailable to the Florida plaintiffs, without showing how releasing those records now would impair the fairness of a future trial.

Chiquita argues that the Commission's decision was nonetheless defective in light of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), because the agency failed to explain the rationale underlying its decision, and the reasons it offers now do not appear in the administrative record, *see id.* at 87 ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."). The Commission's rejection of Chiquita's discovery-related argument was articulated only briefly and in a somewhat conclusory fashion, and the Commission has highlighted certain ways that Chiquita did not meet its burden that were not specifically discussed in the order under review. Even so, we find no violation of the *Chenery* principle. "Although it is axiomatic that we may uphold agency orders based only on reasoning that is fairly stated by the agency in the order under review . . . the contested decision need not be a model of clarity." *Casino Airlines, Inc. v. NTSB*, 439 F.3d

715, 717 (D.C. Cir. 2006) (internal brackets and quotation marks omitted). The Commission's decision clears that low bar. The Commission's General Counsel found that Chiquita had not shown how the early release of the documents would render discovery so one-sided as to jeopardize fairness at trial, and counsel for the Commission takes the same position on appeal. *Chenery* does not bar an agency's counsel from merely elaborating on the consistent stance the agency articulated below.

Finally, Chiquita argues that the Commission failed to consider adequately the company's argument that releasing the documents through FOIA would preclude Chiquita from seeking an appropriate protective order. If the documents were obtained through discovery instead, Chiquita notes that it could obtain a protective order prior to releasing the records to the Florida plaintiffs. That protective order would prohibit the plaintiffs and their associates from misusing the documents by publicizing them, speculating as to the identities of their authors, or mischaracterizing their contents.

We reject this argument. Exemption 7(B) is not a tool to protect reputation and privacy interests unless the damage disclosure might pose to such interests is likely to impact the ultimate fairness of a trial. Chiquita no longer claims, as it did below, that release of the documents through FOIA, without the opportunity for a prior protective order, will impair judicial fairness or bias potential jurors. And Chiquita has not explained to us or the Commission how a trial in the Florida litigation would be rendered unfair because the Archive and

the public have access to these documents. Absent such a showing, Exemption 7(B) does not apply.[4]

Chiquita points to the Supreme Court's declaration in *Seattle Times Co. v. Rhinehart* that discovery is conducted in private and that members of the public have no unfettered right to access documents obtained through discovery. 467 U.S. 20, 33 (1984). But *Seattle Times* was about discovery, not FOIA, and "the FOIA disclosure regime . . . is distinct from civil discovery." *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009). "[W]hile information disclosed during discovery is limited to the parties and can be subject to protective orders against further disclosure, when a document must be disclosed under FOIA, it must be disclosed to the general public and the identity of the requester is irrelevant to whether disclosure is required." *Id*. at 538-39. Because Chiquita's objection on this score derives from the distinct characteristics of discovery, which are not relevant to the purpose or text of FOIA, it cannot succeed.

IV

For the foregoing reasons, we affirm the judgment of the district court and vacate the injunction pending appeal.

---

[4] The General Counsel ordered the Office of FOIA Services to determine whether certain files should be withheld from production on privacy grounds and noted that the Office will redact personal information from all remaining records. Chiquita thus has the benefit of some protections for the privacy interests of its employees. Chiquita does not appeal those aspects of the General Counsel's decision.