# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 20, 2017      Decided November 21, 2017

No. 16-1290

PRESS COMMUNICATIONS LLC,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

ATLANTIC CITY BOARD OF EDUCATION,
INTERVENOR

On Appeal from an Order of the
Federal Communications Commission

*Harry F. Cole* argued the cause for appellant. With him on the briefs were *Anne Goodwin Crump* and *Ashley Ludlow*.

*Thaila K. Sundaresan*, Counsel, Federal Communications Commission, argued the cause for appellee. With her on the brief were *Howard J. Symons*, General Counsel at the time the brief was filed, *Jacob M. Lewis*, Associate General Counsel, and *Richard K. Welch*, Deputy Associate General Counsel.

*Matthew T. Murchison* argued the cause for intervenor. With him on the brief were *James H. Barker*, *Matthew J. Glover*, and *Alexander L. Stout*.

Before: PILLARD and WILKINS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* PILLARD.

PILLARD, Circuit Judge:  Press Communications (Press) runs a radio station broadcasting from a small town on the Atlantic Coast in New Jersey. Press would like to move the station to different premises further inland—a move that for technological and regulatory reasons would require it also to shift to a new channel on the radio dial.  Press accordingly submitted an application to the Federal Communications Commission (FCC or Commission) for a license modification to permit its channel transfer.  Specifically, Press asked the FCC to accommodate its move by authorizing Press to swap stations with Equity Communications (Equity).  The proposed swap would assign Press's WBHX (FM) the channel Equity's WZBZ (FM) now occupies, and move Equity's station to Press's current channel.  The FCC dismissed Press's application because bumping Equity to Press's channel would violate FCC channel spacing rules, putting Equity's station too close to the Atlantic City Board of Education's student run station WAJM (FM) and to Delaware station WJBR (FM).  The Commission disagreed with Press's view that, because Press filed its application after the lapse and before the untimely renewal of the Board of Education's license, the short spacing problem was irrelevant.  Press now asks us to set aside as arbitrary and capricious and inconsistent with the Communications Act of 1934 (Act) the FCC's *Memorandum Opinion & Order* denying its application for review of the FCC Media Bureau's decision.  Because we conclude that the FCC acted reasonably and complied with the Act, we affirm the FCC's *Order*.

## I. BACKGROUND

### A. LEGAL FRAMEWORK

Title III of the Act regulates American broadcast radio. 47 U.S.C. § 301 *et seq.* The Act confers on the United States control "over all the channels of radio transmission," *id.* § 301, charges the FCC with implementing a licensing scheme pursuant to the Act, *id.* § 303, and sets "public convenience, interest, or necessity" as the Commission's guiding principles, *id*. Operation of a broadcast radio station requires a license from the FCC, *id.* §§ 301, 307(a)-(d), and a station must apply to the FCC for permission to modify its license, *see* 47 C.F.R. § 73.3573. The FCC may dismiss an application that does not comply with FCC rules. *Id.* § 73.3566. The FCC's rules cover a lot of regulatory terrain, from the construction of radio towers to the conditions of broadcast operation. *See generally* 47 C.F.R. subpts. B & H. Those rules spell out the conditions for modifying a station's operation, whether by "major change" such as new ownership, or "minor change" such as change to an adjacent channel. *See id.* § 73.3573. As FCC regulations explain, an application that does not comply with FCC "rules, regulations or other requirements," "unless accompanied by an appropriate request for waiver, will be considered defective and will not be accepted for filing." *Id.* § 73.3566.

The rule at the heart of this case is Section 73.207 of the Commission's regulations, which establishes minimum separation requirements for FM radio stations. *Id.* § 73.207. Each radio station has a home on the ground (its transmitter), and on the dial (its frequency). When two stations are not far enough apart both on the ground and on the dial, their signals are likely to interfere with one another, disrupting their broadcasts. The spacing requirements laid out in Section 73.207 are designed to prevent that unwanted interference. The

distance the FCC requires between station transmitters on the ground corresponds inversely to the distance between their frequencies on the dial. For example, for our purposes, the transmitters of "first-adjacent" channels, such as 99.3 and 99.5 or 100.7 and 100.9, must be at least 113 kilometers apart; transmitters for "second-adjacent" channels, such as 99.3 and 99.7 or 100.7 and 101.1, must have at least 69 kilometers between them. *Id.* § 73.207(b)(1) (Table A). As a general matter, an application that fails to meet these spacing requirements, both on the ground and between frequencies, is said to create short spacing and is therefore defective. *Id.* § 73.207(a).

Section 73.213 exempts the preexisting locations of "grandfathered" short spaced stations from compliance with the spacing rules of Section 73.207. *See id.* § 73.213. When the FCC adopted its minimum spacing requirements, it excused stations at already-authorized locations from complying with the new spacing criteria; as Section 73.213 explains, stations operating at locations authorized prior to 1964 or 1989 are thereby "grandfathered." *See id.* § 73.213(a), (b). Grandfathered short spaced stations "may be modified or relocated" under Section 73.213, *id.*, but any application for minor modification such as a change in channel "must" satisfy "the minimum spacing requirements of § 73.207" at the proposed new site "without resort" to the grandfathering provision, *id.* § 73.203 Note.

The FCC's regulations also spell out licensing procedures. The Act provides that no station may broadcast without a federal license. 47 U.S.C. § 301. Once granted, "no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license." *Id.* A license term is "not to exceed 8 years," *id.* § 307(c)(1), and may be renewed, *id.* §§ 307(c)(1), 309(k)(1). According to Section 73.3539 of

the Commission's regulations, applicants must submit broadcast license renewal applications to the FCC at least four months before the expiration of their current license terms. 47 C.F.R. § 73.3539. In addition to processing license renewals, the FCC also handles license modifications. The FCC follows a "first come/first serve" processing sequence for license modification applications. *Id.* § 73.3573(f)(1). Under this cut-off rule, "the first acceptable application cut[s] off the filing rights of subsequent applicants" that would be mutually exclusive because, for example, they would use the same frequency or be so close as to create interference. *Id.*

## B. FACTUAL BACKGROUND

On August 27, 2010, Press submitted a minor modification application to the FCC. At the time it applied, Press operated radio station WBHX from a facility it leased on a monthly basis in Beach Haven, Ocean County, New Jersey. Press sought to move the transmitter for WBHX to a new location that would be less prone to natural disaster and where it might find a longer term lease. Because moving its transmitter to a new location would make WBHX short spaced to nearby radio stations, Press proposed that the FCC effectuate an involuntary channel swap with the frequency now used by Equity's station, WZBZ. Under Press's proposal, Equity would keep its transmitters in their current location, but would switch frequencies with Press; that is, Equity would move on the radio dial from 99.3 to 99.7, while Press would move from 99.7 to 99.3. Broadcasting from 99.3, Press could move its physical transmitters inland without short spacing itself to stations adjacent to 99.7.

In response to Press's application, the FCC's Media Bureau sent a deficiency letter notifying Press that its application involved two impermissible short spacings. The letter first explained that the proposed swap would leave

Equity's station, WZBZ, short spaced to Atlantic City Board of Education station WAJM, located at 88.9 on the dial. Press had acknowledged in its application that, were the swap to take place, Equity's station would "theoretically" be short spaced to the Board of Education's station, but argued the concern was "moot" because the Board of Education had failed to renew its broadcast license. J.A. 57. The Board of Education's license had expired in June 2006, and it did not submit a renewal application to the FCC until three weeks after Press submitted its minor modification application. Even though the Board of Education's license had expired, the Media Bureau recognized WAJM as an operational station (albeit broadcasting unlawfully) and disagreed with Press's contention that the minimum distance requirement between WZBZ and WAJM was "moot" or otherwise immaterial.

Second, the new dial position Press proposed for Equity's WZBZ—i.e. the position Press now holds—would, if occupied by Equity, make the station short spaced to Delaware station WJBR 99.5. Equity's current dial position is also short spaced to WJBR, but enjoys grandfather status there. The move from 99.3 to 99.7 would not change the distance between Equity and WJBR on the dial: At either location, Equity would be .2 MHz away from Delaware station WJBR 99.5. Nor would the physical distance between the two stations change: The tower locations and hence ground distance between the two stations would remain the same. The move, therefore, would not exacerbate Equity's existing short spacing. But the Media Bureau wrote that the conventional spacing rules of Section 73.207 applied to Equity's move, and Equity would not meet those minimum spacing requirements with respect to WJBR at its new location; that short spacing, the Commission ruled, "constitute[d] an acceptance defect." J.A. 261. The Bureau noted that Press had "failed to cite any precedent for proposing an *involuntary* channel substitution to a grandfathered short-

spaced station." J.A. 261 n.3. It therefore deemed the WZBZ-WJBR short spacing a defect in Press's application.

The Media Bureau gave Press thirty days to cure those two defects, and warned Press that failure to do so would result in a dismissal of its application. Press responded by insisting that its initial application was not defective because it "would not result in any unacceptable channel separations." J.A. 276. It neither cured the defect nor sought a waiver, but urged the Bureau to accept its application as-is.

In an Order also granting the Board of Education's renewal application, the FCC's Media Bureau formally dismissed Press's minor modification application. *In re Applications of Atl. City Bd. of Educ. & Press Commc'ns, LLC*, 30 FCC Rcd. 10,583 (Media Bureau 2015) (*Bureau Order*). The Bureau determined that the two short spacings rendered the application defective. Because Press declined to remedy the defects or to seek a waiver of the spacing rules, the Bureau dismissed its application. *Id.* at 10,585-87. Press then submitted to the full Commission an application for review of the Media Bureau decision. The Commission denied the application. *In re Atl. City Bd. of Educ. & Press Commc'ns, LLC*, 31 FCC Rcd. 9380 (2016) (*FCC Order*). This appeal followed.

## II. DISCUSSION

Press advances two arguments for reversal of the FCC's decision to dismiss its modification application. It asserts first that the transfer of a grandfathered short spaced station is permitted under the FCC's grandfathering rule, 47 C.F.R. § 73.213, making arbitrary and capricious the agency's enforcement of its conventional spacing rules against a short spacing between Equity's WZBZ and Delaware station WJBR. Second, Press contends that the agency's decision to accept the Board of Education's late-filed application to renew the license

for WAJM is contrary to the Communications Act and constitutes an arbitrary and capricious waiver of the agency's deadline and cut-off rules.

Press must prevail on both arguments in order for us to set aside the *FCC Order*. If either of those arguments fails—that is, if the FCC acted reasonably in rejecting the application on the basis of either the WZBZ-WBJR short spacing or the WZBZ-WAJM short spacing—we must uphold the agency's decision to dismiss Press's application.

## A.  GRANDFATHERED SHORT SPACING:  WZBZ-WJBR

We review the FCC's decision only to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Our review is "very deferential," *Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009). "Normally, an agency [decision] would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As we consider the FCC's explanation for its decision, we recognize the FCC's interpretation of its own regulations "control[s] unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotations omitted).

We first consider whether the Commission permissibly dismissed Press's application to move Equity's station without Equity's consent from its current location, where it is short spaced but grandfathered under the Commission's rules, to an

alternative short spaced location. The FCC contends that any change in channel must meet the spacing requirements. Press would therefore at least need to establish that its proposed move yields adequate channel spacing or, alternatively, obtain a waiver of the spacing rule. Press does not dispute that its proposed move would leave Equity short spaced to Delaware station WJBR, and it did not ask the Commission to waive its spacing rules. It also failed to point to any precedent for an involuntary transfer of a third party's station to a short spaced location in the absence of a waiver. Press instead rests on its assertion that grandfathered stations simply are not subject to the conventional spacing rules. We conclude otherwise.

The FCC rationally applied its spacing rules, consistent with its past practice, when it dismissed Press's application. Press focuses on Section 73.213(b) of the Commission's rules, which provides that "[s]tations at locations authorized prior to May 17, 1989, that did not meet the . . . separation distances required by § 73.207 and have remained short-spaced since that time"—such as Equity's station WZBZ—"may be modified or relocated." 47 C.F.R. § 73.213(b). But the regulation does not require the Commission to grant a modification application that imposes involuntary relocation on a third party, nor does it grandfather that third party's short spacing in the absence of a request to waive the short spacing prohibition. Our inquiry, then, cannot end with Section 73.213(b).

A grandfathered station qualifies for a change in channel, says the FCC, only if it meets standard spacing requirements at its new location. Press's argument to the contrary ignores a crucial provision of the regulatory scheme: Applications for a change in channel—like the one Press seeks for itself and Equity's station WZBZ—must satisfy "the minimum spacing requirements of § 73.207 at the site specified in the application, *without resort* to the provisions of the Commission's rules

permitting [grandfathered] short spaced stations as set forth in [§] 73.213." 47 C.F.R. § 73.203 Note (emphasis added). Even without any deference to the Commission, we find it plain that the Note to Section 73.203 means that a short spaced station grandfathered under the rule is not necessarily permitted to rely on its prior grandfathering when it transfers channels. In any event, under *Auer v. Robbins*, the FCC's interpretation of Section 73.203 is "controlling" because it is neither "plainly erroneous" nor "inconsistent with the regulation." 519 U.S. at 461. Press's application to swap Equity into a new short spaced channel position was therefore "not in accordance with the FCC rules," and defective "unless accompanied by an appropriate request for waiver." 47 C.F.R. § 73.3566(a).

At argument, counsel for Press suggested that we could not rely on the Note to Section 73.203 without running afoul of the *Chenery* principle that a reviewing court may only affirm an agency's action on the grounds the agency articulated. *SEC v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943). We have explained that "the contested decision need not be a model of clarity. As long as 'the agency's path may reasonably be discerned,' we will uphold the decision even if it is 'of less than ideal clarity.'" *Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717 (D.C. Cir. 2006) (quoting *Bowman Transp., Inc. v. Ark-Best Freight Sys., Inc*., 419 U.S. 281, 286 (1974)). The FCC's discussion of the WZBZ-WJBR short spacing is admittedly sparse, but the *Bureau Order* invokes the principle that involuntary channel changes for grandfathered stations must meet the FCC's minimum spacing requirements. The agency need not have cited the Section 73.203 Note by name, so long as it made clear that Equity was subject to the spacing rules of Section 73.207. *Bureau Order*, 30 FCC Rcd. at 10,586. We can reasonably discern the Bureau's path in its decision enforcing the spacing requirements. Our consideration of the FCC's citation of the Note in support of an already-familiar

argument is therefore consistent with *Chenery*. In *Chiquita Brands International, Inc. v. SEC*, for example, we found "no violation of the *Chenery* principle" where the SEC's reasoning was initially "articulated only briefly and in a somewhat conclusory fashion" and the agency in this court invoked reasoning "not specifically discussed in the order under review." 805 F.3d 289, 299 (D.C. Cir. 2015).

The FCC's enforcement of its spacing rules was also consistent with its past practice. Press sought an unprecedented license modification from the Commission. It asked to move Equity involuntarily to a new short spaced location. As Press conceded at oral argument, it could identify no prior case in which the Commission granted an application to move a third party's grandfathered station to a different short spaced location without its consent. The FCC emphasized in its Staff Letter and the *Bureau Order* that there is no precedent for "*involuntarily* changing one station's short-spaced channel to another short-spaced channel." *Bureau Order*, 30 FCC Rcd. at 10,586; *see also* J.A. 261 n.3. Regardless of a station's grandfathered status, the FCC may force an involuntary transfer only if, "in the judgment of the Commission," doing so would "promote the public interest, convenience, and necessity." 47 U.S.C. § 316(a)(1). The statute leaves to the Commission's discretion whether a transfer benefits the public, and Press has failed to identify any way in which the Commission exercised that discretion arbitrarily here.

Press rests instead on precedent approving voluntary moves by grandfathered stations. Even if Equity had joined with Press to apply for a voluntary station swap, however, the FCC's precedent would not compel the agency to disregard its spacing rules. Rather, the FCC would merely be authorized to do so if, in its judgment, waiving the short spacing prohibition were shown to be in the public interest. In *In re Eatonton*, the

Commission laid out the framework under which it is "appropriate to consider waiving strict application of Section 73.207." *In re Eatonton and Sandy Springs, Ga., and Anniston and Lineville, Ala.*, 6 FCC Rcd. 6580, 6583 (Media Bureau 1991) (*Eatonton*). Waiver may be proper if: (1) no new short spacings are created; (2) no existing short spacings are exacerbated by bringing the relevant stations closer together; and (3) the potential for interference does not increase. *See id.* The Commission has applied that waiver framework to applications seeking voluntary transfers of grandfathered stations to alternative short spaced locations. *See In re Newnan and Peachtree City, Ga.*, 7 FCC Rcd. 6307, 6308 (1992). While a grandfathered station may change channels, then, it may only do so pursuant to an FCC waiver of Section 73.207's requirements.

Press responds that its application did not create "any unacceptable channel separations," J.A. 276, so Press "did not propose a waiver [because] no waiver request was necessary," Appellant's Br. 39—an assertion we have already rejected. To the extent Press argues it did in fact seek a waiver by eventually claiming that its request met the *Eatonton* framework, that belated contention does not render the Commission's decision arbitrary and capricious. *Eatonton* creates no entitlement to a waiver even where the specified circumstances are present, but merely sets out factors under which the Commission will "consider" waiver. The decision explains that "waivers of our spacing rules will not be granted absent a showing of compelling need," *Eatonton*, 6 FCC Rcd. at 6584, and, indeed, the Bureau declined to waive the spacing requirements in *Eatonton* itself, where the proposed channel transfer would have actually reduced existing short spacing. *Id.*

Press has also argued that *Eatonton* does not impose an affirmative burden on applicants to seek spacing waivers; in

other words, Press suggests the Commission should have conducted an *Eatonton*-style waiver analysis as a matter of course. Press cites rulemakings in which the Bureau applied the three-factor test without specifying that it did so in response to a party's waiver request. Even where the *Eatonton* requirements may be met, however, the agency still makes case-by-case public-interest determinations, *see id.*, and no party is entitled to waiver of the minimum spacing criteria as a matter of right.

Waivers of the spacing requirements are but one avenue by which the FCC may further the public's "interest, convenience and necessity"; the *Eatonton* factors are a subset of the agency's more general public interest consideration. *See id.* at 6580, 6584. When the Bureau offered Press an opportunity to supplement its initial application—which did not so much as allude to waiver—Press eventually asserted that "*all*" of the *Eatonton* "factors are present here" and claimed its application would further the public interest. J.A. 275-78. The Media Bureau, however, remained unpersuaded. Press discussed the anticipated spacing effects of its proposed swap, but offered no support for its contention that the swap would not increase interference. It also did not convince the FCC that the order approving the swap, which Equity opposed, would nonetheless be in the interests of the public. Equity, meanwhile, told the Commission that "there was a good policy reason" that Press's proposed involuntary swap was unprecedented: Not all short spaced allotments are created equal. "Equity should not be forced to accept an alternate short-spaced allotment that may prove to be operationally deficient to that of its existing allotment merely to facilitate a change by another station." J.A. 104. With Press's and Equity's arguments before it, the Commission determined there was no "compelling need," *Eatonton*, 6 FCC Rcd. at 6584, or public interest sufficient to merit departure from its

spacing rules. That decision, based on the objectives the Communications Act sets for the agency and FCC precedent seeking to serve those objectives, was not arbitrary or capricious.

In short, FCC regulations, decisions, and practice support the Commission's contention that applications for minor modifications are subject to the spacing requirements articulated in Section 73.207. Any nonconforming application requires a waiver of that rule, and Press failed to justify such waiver. The Commission reasonably rejected its application as defective. We accordingly deny Press's challenge to the FCC's *Order*.

## B. LICENSE RENEWAL: WZBZ-WAJM

The *Bureau Order* also relied on a separate ground: The channel swap Press proposed in its application would create a conflict with WAJM, a station run by the Atlantic City Board of Education. Press argues that because WAJM had not filed for renewal of its expired license at the time of Press's mutually exclusive application, the FCC was required to give Press the benefit of the cut-off rule and deny WAJM's subsequent, late-filed renewal application.

Because the short spacing defect between WZBZ and WJBR is independently sufficient to support the FCC's *Order*, we do not reach Press's alternative argument. Press's assertion of cut-off rights vis-à-vis the Board of Education's station also is of limited prospective importance because the Media Bureau has adopted a new policy for processing license renewal applications that makes lapses like the Board of Education's less likely to recur. *FCC Order*, 31 FCC Rcd. at 9384 n.30. Under its new policy, the Bureau monitors licenses due to expire and issues "a notice of apparent liability if the renewal has not been filed within 30 days of the original due date." *Id*.

A licensee in receipt of such a notice faces apparent liability that presumably will prompt it to file a renewal application before its license expires.

* * *

We uphold the FCC's *Order* as valid based on the failure of Press's proposed channel swap with Equity to comply with the applicable short spacing bar or establish its entitlement to a waiver of that bar. Because that defect suffices to support the *Order*, we do not reach Press's challenge to the FCC's license-renewal practices, which have in any event been superseded by the new policy.

*So ordered.*